United States Court of Appeals
Fifth Circuit

**F I L E D**

May 18, 2006

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT

_____

No. 05-70017
_____

JOSE ANGEL MORENO,

Petitioner-Appellant,

versus

DOUG DRETKE, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent-Appellee.

Appeal from the United States District Court
For the Western District of Texas

Before GARZA, DeMOSS, and CLEMENT, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Jose Moreno was convicted of murder in Texas state court and sentenced to death. After his conviction was affirmed on appeal, he petitioned for state and federal habeas relief. The district court denied all of Moreno's claims and declined to issue a certificate of appealability ("COA"). Moreno moves in this court for a COA.

Moreno confessed to plotting for months to kidnap and ransom someone. He ultimately settled on John Cruz as his victim because he believed Cruz was a member of a wealthy family. After locating Cruz through a high school directory, Moreno enlisted the aid of two friends in digging a grave.

After the grave was dug, Moreno plotted to capture and kill Cruz. Moreno first tried to flag Cruz's car down after Cruz got out of work. When that did not work, Moreno placed large rocks in the road near Cruz's house, in the hopes that Cruz would stop his car and clear the road, leaving him vulnerable to attack. On the night of January 21, 1986, his plan worked. Cruz got out of his car and attempted to move the rocks. Moreno approached, brandished a gun, blindfolded and handcuffed Cruz, and drove him to the grave site. As Cruz stood in front of the grave, Moreno shot him in the head from a range of three to four feet. Cruz fell into the grave, and Moreno buried him and concealed the grave with trash. Moreno then made two phone calls to Cruz's family demanding a thirty-thousand dollar ransom. In a police-recorded conversation, the Cruz family informed Moreno that the money was in trust and that they could not access it immediately, to which Moreno replied, "You killed him, not us." After informants identified Moreno's voice on the recording, the police obtained a search warrant for his home where they found the gun used to kill Cruz. The police arrested Moreno, and he signed a confession.

A Bexar County grand jury indicted Moreno on the charge of capital murder on April 2, 1986, for murder in the course of committing and attempting to commit a kidnaping under Texas Penal Code § 19.03(a)(2). Prior to trial, Moreno filed a motion to suppress his confession and the murder weapon on the basis that there was insufficient evidence to establish probable cause in the affidavit

supporting the search warrant. After a hearing, the trial court denied this motion.

On appeal, Moreno argued, *inter alia*, that the trial court erred in denying his motion to suppress the gun seized during the search because the affidavit in support of the warrant contained misrepresentations. The Texas Court of Criminal Appeals observed that Moreno had objected to the introduction of the affidavit into evidence during the suppression hearing, but the district court never ruled on its admissibility. Accordingly, the affidavit was never made a part of the trial record, and the appellate court was unable to review the merits of Moreno's Fourth Amendment claim.

Moreno filed a petition for habeas corpus in state court raising multiple claims of error. Those relevant to this motion include: 1) that he received ineffective assistance of appellate counsel; and 2) the trial court erred in denying his motion to suppress the murder weapon. The state court first held that Moreno could not establish that his appellate counsel's actions prejudiced him. Second, the state court held that the suppression issue had been "raised and rejected on direct appeal" and therefore was not appropriately raised in a habeas petition.

Moreno filed a second state habeas corpus petition raising a claim that he is mentally retarded and ineligible for the death penalty under *Atkins v. Virginia*, 536 U.S. 304 (2002). The Texas Court of Criminal Appeals dismissed the petition, holding that it was an abuse of the writ because Moreno failed to allege a prima facie *Atkins* claim.

In his federal habeas corpus petition, Moreno argued, *inter alia*: 1) his appellate counsel rendered ineffective assistance; 2) the trial court violated his Fourth Amendment rights by denying his motions to suppress; 3) he is ineligible for the death penalty because he is retarded; and 4) he is ineligible for the death penalty because he formed the intent to kill Cruz prior to Moreno's eighteenth birthday.

3

The district court denied relief. The district court held: 1) Moreno's appellate counsel was not ineffective, nor was Moreno prejudiced by counsel's performance; 2) Moreno's Fourth Amendment claim is barred by *Stone v. Powell*, 428 U.S. 465 (1976), is procedurally barred, and fails on the merits; 3) the state court's rejection of Moreno's mental retardation claim was not an unreasonable application of *Atkins* or an unreasonable determination of the facts; 4) Moreno's execution was not barred by *Roper v. Simmons*, 543 U.S. 551 (2005). The district court denied a COA on all claims.

Moreno now requests a COA from this court.

II

A petitioner may receive a COA only if he makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Moreno must demonstrate that jurists of reason could disagree with the district court's resolution of his claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further. *Summers v. Dretke*, 431 F.3d 861, 869 (5th Cir. 2005). When ruling on a COA, we are mindful of AEDPA's deferential standard of review. *Brown v. Dretke*, 419 F.3d 365, 371 (5th Cir. 2005). The district court may only grant relief with respect to a claim adjudicated on the merits when the claim either: 1) resulted in a decision contrary to, or involved an unreasonable application of, Supreme Court precedent; or 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). Factual findings by the state court are presumed correct, and a petitioner can rebut them only with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Because this case involves the death penalty, we resolve any doubts as to whether a COA should issue in Moreno's favor. *Morris v. Dretke*, 379 F.3d 199, 204 (5th Cir. 2004).

A

Moreno argues that he is ineligible for the death penalty by reason of mental retardation. The Supreme Court held in *Atkins*, 536 U.S. 304, that the Eighth Amendment forbids the execution of the mentally retarded. The Court left "to the States the task of developing appropriate ways to enforce the constitutional restriction upon their execution of sentences." *Id.* at 317 (quoting *Ford v. Wainwright*, 477 U.S. 399, 416-17 (1986)). Because the Supreme Court declined to define explicitly "mental retardation" for purposes of the Eighth Amendment, Texas courts have employed the definition promulgated by the American Association of Mental Retardation. *In re Hearn*, 418 F.3d 444, 446 (5th Cir. 2005). This definition imposes three requirements: 1) subaverage general intellectual functioning, generally defined as an IQ below 70; 2) accompanied by related "limitations in adaptive functioning" defined as "significant limitations in an individual's effectiveness in meeting the standards of maturation, learning, personal independence, and/or social responsibility that are expected for his or her age level and cultural group, as determined by clinical assessment and, usually, standardized scales"; and 3) onset prior to the age of 18. *Ex parte Briseno*, 135 S.W.3d 1, 7, n.24 & 25 (Tex. Crim. App. 2004).[1]

The Texas Court of Criminal Appeals has identified additional criteria for courts to use in assessing whether a prisoner's "adaptive functioning" is sufficiently limited, including: 1) whether those who knew the prisoner during his developmental state considered him to be mentally retarded; 2) whether he has formulated and carried out plans; 3) whether his conduct shows that he is a leader; 4) whether his conduct in response to external stimuli is rational; 5) whether he responds coherently and rationally to questioning; 6) whether he can effectively lie to further his own interests; and 7)

---

[1] The Supreme Court cited this definition with approval in *Atkins*, 536 U.S. at 309 n.3.

whether the crime of conviction required planning and complex execution. *Id.* at 8-9. Moreno does not dispute that these are correct definitions of mental retardation.

In support of his *Atkins* claim in state court, Moreno presented evidence that he scored a 64 on an IQ test that was administered in 2003, after *Atkins* was decided and when he was 35 years of age. The psychologist who administered this test qualified the score with the following observations:

> The results probably reflect the lowest level of his abilities. The results may not be valid, because he may not have been motivated to give his best effort on some of the tasks, and may have exaggerated any possible deficits. He often gave up easily on questions but would guess at the answers when encouraged to do so by the examiner. . . . . This score may somewhat underestimate his true level of intellectual functioning.

The psychologist also observed that Moreno's speech was "free of articulation errors," he expressed himself appropriately and coherently, and his "cognitive processing speed was unremarkable." He was oriented to time and place, his memory was intact, and he was able to perform tasks that took several minutes of concentration.

Moreno argued that he suffered adaptive limitations by alleging his attendance at special education classes as a child. His only evidentiary support for that claim was the psychologist's report reciting Moreno's self-reported educational background. He could not identify any specific special education classes or provide documentation of those classes. Moreno also argued that his history of substance abuse indicated adaptive limitations.

The state court dismissed this claim brought in a successive state habeas corpus petition as an abuse of the writ because Moreno had not alleged sufficient facts to establish a prima facie case supporting his claim.[2] Specifically, the court held that Moreno had not alleged sufficient facts to

---

[2] The Texas Code of Criminal Procedure Article 11.071 provides that a successive state habeas corpus petition may not be considered unless the petitioner alleges specific facts establishing a constitutional violation. *See Ex parte Staley*, 160 S.W.3d 56, 63 (Tex. Crim. App. 2005); *Ex parte*

6

support a finding that he suffered adaptive limitations.

After reviewing the evidence presented to the Texas state court, the district court held that this was not an unreasonable application of *Atkins*. First, there was no evidence of a low IQ before the age of 18. The only IQ test Moreno submitted was performed on him when he was 35, after the *Atkins* decision. Second, the expert who performed the IQ test on Moreno expressed concerns that Moreno appeared to be poorly motivated and may have exaggerated his deficits. Third, Moreno has obtained his Graduate Equivalency Degree ("GED"). Fourth, there was testimony at the trial by Moreno's former employer that Moreno was "very intelligent, super intelligent." Fifth, during the punishment phase of Moreno's trial, there was testimony concerning his multiple, elaborate pretrial escape attempts, some of which involved picking the locks on his handcuffs and cell door with a paperclip and obtaining access to other portions of the jail by impersonating other inmates. Finally, Moreno's crime involved a complicated kidnaping that he orchestrated, planned, and enlisted assistance in executing.[3]

---

*Johnson*, 36139-04, 2003 WL 21715265 (Tex. Crim. App. June 6, 2003) (Johnson, J., concurring).

[3] Although nominally a procedural dismissal, the state court based its ruling on Moreno's failure to allege sufficient evidence to establish a prima facie *Atkins* claim. The district courts in this circuit are divided as to whether such a dismissal is "on the merits" or procedural for purposes of AEDPA. *Compare Moore v. Dretke*, 603CV224, 2005 WL 1606437, at *2-*3 (E.D.Tex. July 1, 2005) (procedural), *with Moreno v. Dretke*, 362 F.Supp.2d 773, 790-91 (W.D.Tex. 2005) (on merits); *Williams v. Dretke*, A.H-04-2945, 2005 WL 1676801 (S.D. Tex. July 15, 2005) (assuming without discussion that dismissal was on merits). If such a dismissal is on the merits, the federal district court is required to apply AEDPA's deferential standard of review. *Miller v. Johnson*, 200 F.3d 274, 281(5th Cir. 2000). If such a dismissal is procedural, review is *de novo, id.* at 281 n.4, but Moreno must demonstrate cause and prejudice for his default. *Aguilar v. Dretke*, 428 F.3d 526, 533 (5th Cir. 2005) (collecting cases); *see In re Johnson*, 334 F.3d 403, 405 (5th Cir. 2003) (Jones, J., concurring) (*Atkins* claim dismissed by state court as an abuse of the writ is procedurally defaulted). The district court in this case held that the state court's dismissal of Moreno's petition was on the merits because the state court had held that Moreno failed to establish a prima facie *Atkins* claim.

In this motion, Moreno cites six pieces of evidence that he argues establish that he suffers adaptive functioning deficits: 1) he quit school after the eighth grade; 2) he worked in the fast food industry; 3) he took special education classes in school; 4) the psychologist who tested him reported that he was a poor personal historian;[4] 5) he had a history of drug and alcohol abuse; and 6) he suffers from antisocial personality disorder. Much of this evidence, such as Moreno's employment history, fails to suggest adaptive limitations. Balanced against this meager evidence of adaptive limitations is the substantial evidence that Moreno possesses adaptive behavioral skills. There is evidence that Moreno is able to formulate and carry out plans, lead and manipulate others in furtherance of his crimes, and respond coherently to questioning, all of which suggests a lack of adaptive limitations. There is also substantial evidence of Moreno's intelligence, including his GED, the elaborate nature of his crime and multiple escape attempts, and his former employer's opinion that he is intelligent. Accordingly, the district court's decision that the state court reasonably held that Moreno was not mentally retarded is not debatable, and we decline to issue a COA on this claim.

B

Moreno argues that he is ineligible for the death penalty because he formed the *mens rea* to commit the murder in question before he was eighteen years of age, even though he killed his victim

---

Moreno does not argue that the district court should have reviewed his *Atkins* claim *de novo*. Nor does he argue that he has satisfied the cause and prejudice standard required to overcome a state procedural bar. Although the State raised the procedural default issue before the district court, it has not pursued that argument in this court. Accordingly, we decline to raise the issue *sua sponte*. *See Smith v. Johnson*, 216 F.3d 521, 523-24 (5th Cir. 2000) (holding that court may, in its discretion, raise issue *sua sponte* where petitioner has been given notice that procedural default will be an issue for consideration). We therefore assume for the sake of this appeal that AEDPA's deferential standard of review applies and do not require Moreno to demonstrate cause and prejudice.

[4] The psychologist attributed this not to Moreno's inability to remember the past, but to his refusal to candidly respond to questioning.

8

after his eighteenth birthday.  Although this issue was not exhausted in the state court, the District Court granted Moreno's motion for leave to file a supplemental claim based on the recent Supreme Court decision of *Roper v. Simmons*, 543 U.S. 551 (2005), and denied the claim on the merits as permitted by 28 U.S.C. § 2254(b)(2).

Moreno argues that although he was eighteen when he killed Cruz, he first formed the intent to commit the crime when he was seventeen.  No reasonable jurist would find the district court's application of *Roper* debatable.  *Roper* prohibits a state from executing a person who committed his offense prior to his eighteenth birthday.  Although the appropriate *mens rea* is an element of the offense of conviction, criminal liability attaches not to the formation of criminal intent, but to the "concurrence of the mental fault with the act or omission which is the basis for liability."  1 WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 6.3 at 451 (2d ed. 2003).  "Criminal liability is normally based upon the concurrence of two factors, 'an evil-meaning mind [and] an evil-doing hand . . . .' " *United States v. Bailey*, 444 U.S. 394, 402 (1980) (quoting *Morissette v. United States*, 342 U.S. 246, 251 (1952)).  That Moreno may have originally formulated the intent to murder Cruz when he was seventeen is irrelevant.  Moreno retained that intent after his eighteenth birthday despite opportunity to abandon his criminal plan.  Criminal liability was therefore not imposed based on Moreno's mental state when he was seventeen, but instead based on his mental state when he was eighteen and committed the criminal act.  *See generally* 1 LAFAVE, *supra* at §6.3(a) (discussing the requirement that criminal act and mental fault be concurrent).  No reasonable jurist would find this conclusion debatable.

## C

Moreno argues that the trial court erred in denying his motion to suppress the murder

weapon, which was seized from his house during the execution of a search warrant. He claims that the affidavit used to secure the warrant was not based on the affiant's personal knowledge and contained materially false statements.

On direct appeal, the Texas Court of Criminal Appeals observed that the appellate record did not contain a copy of the affidavit. *Moreno v. State*, 858 S.W.2d 453, 462 (Tex. Crim. App. 1993). The State had produced the warrant and affidavit at the suppression hearing and offered them into evidence for the limited purpose of resolving the motion to suppress. Moreno objected to the admission of these documents, but asked that the trial court not rule on the objection "until the close of evidence and we have a chance to argue." The State responded that it was not offering the exhibits for admission at trial, but only for purposes of the suppression hearing. The trial court responded, "I will defer ruling until I hear all your motions." Following the hearing, the trial court denied the motion to suppress. No further effort was made to place the affidavit and warrant in the trial record.

The Texas Court of Criminal Appeals held that the State's action in marking the warrant and affidavit and offering them into evidence was sufficient to "exhibit" them to the trial judge. *Id.* It was then Moreno's responsibility to ensure that they were included in the record on appeal. *Id.* The court concluded that Moreno's failure to "secure a ruling by the trial court" on the admissibility of the affidavit prevented review of the resolution of the suppression motion. *Id.*

The federal district court ruled against Moreno on his Fourth Amendment claim because it is precluded by *Stone v. Powell*, 428 U.S. 465 (1976). The Supreme Court held in *Stone* that where a petitioner received a full and fair opportunity to litigate a Fourth Amendment claim, he may not receive federal habeas relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at trial. *Id.* at 494. Moreno argues that he did not receive a full and fair

10

opportunity to litigate his Fourth Amendment claim because he was denied meaningful appellate review. In particular, Moreno argues: 1) that the Court of Criminal Appeals denied his motion to supplement the record on appeal with the affidavit; 2) the Court of Criminal Appeals placed the burden on Moreno to secure a ruling on the admissibility of the affidavit; 3) he had secured a ruling that the affidavit had been admitted;[5] 4) the state habeas court did not hold a hearing on his claim that his counsel was ineffective for failing to include the affidavit in the trail record; and 5) the state habeas court declined to consider the affidavit in connection with his claim of ineffective assistance of counsel because he had not moved to introduce it into evidence at the habeas hearing.

This court has held "in the absence of allegations that the processes provided by a state to fully and fairly litigate fourth amendment claims are routinely or systematically applied in such a way as to prevent the actual litigation of fourth amendment claims on their merits," *Stone* forecloses review. *Williams v. Brown*, 609 F.2d 216, 220 (5th Cir. 1980). Moreno argues that the Texas Court of Criminal Appeals erred in deciding his appeal, but errors in adjudicating Fourth Amendment claims are not an exception to *Stone*'s bar. *Janecka v. Cockrell,* 301 F.3d 316, 321 (5th Cir. 2002)

---

[5] Moreno quotes the following exchange in the trial court, which he claims constitutes a ruling on the admissibility of the affidavit:

TRIAL COUNSEL: If the Court will examine what is marked as State's Exhibit 4, which is an affidavit for search and arrest warrant, which I believe the Court has admitted, that is admitted evidence for purposes of this hearing, Your Honor—
COURT: Yes.
TRIAL COUNSEL: State's Exhibit number 5, also, the search warrant in issue; I believe that it is admitted for the purposes of this hearing; and also State's Exhibit 3, which is suppose to be the voluntary statement of the Defendant, which I believe has admitted also for purposes of this hearing.
COURT: Right.

11

(applying *Stone* where petitioner claims that Texas Court of Criminal Appeals overlooked his Fourth Amendment claim); *Christian v. McKaskle,* 731 F.2d 1196 (5th Cir. 1984) (holding that *Stone* applies even though state habeas court erroneously ruled that petitioner's claim had been adjudicated on direct review); *Williams,* 609 F.2d at 220 (holding that *Stone* applied even though state court refused to review Fourth Amendment claim under erroneous belief that it had already been raised and addressed). Moreno presents no argument that Texas courts systematically and erroneously apply the state procedural bar rule to prevent adjudication of Fourth Amendment claims. Accordingly, *Stone* bars his Fourth Amendment claim.

D

Moreno argues that he received ineffective assistance of counsel during direct review of his conviction because his appellate counsel should have ensured that the affidavit and search warrant were included in the record on appeal, thereby permitting the Texas Court of Criminal Appeals to review his Fourth Amendment claim. Moreno does not raise a Sixth Amendment claim based on his trial counsel's failure to ensure the affidavit was included in the record.[6]

To succeed on an ineffective assistance of counsel claim, a petitioner must establish: 1) that the performance of his counsel was deficient; and 2) that he suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A lawyer's performance is deficient when it falls below an objective standard of reasonableness. *Wiggins v. Smith*, 539 U.S. 510, 521 (2003). To show prejudice, a petitioner must establish a reasonable probability that but for his counsel's unreasonable performance, the outcome of the proceeding would have been different. *Id.* at 534. When the

---

[6] *Stone v. Powell* does not bar an ineffective assistance of counsel claim on habeas review based on an attorney's failure to adequately litigate a Fourth Amendment claim. *Kimmelman v. Morrison*, 477 U.S. 365, 382-83 (1986).

petitioner challenges the performance of his appellate counsel, he must show that with effective

counsel, there was a reasonable probability that he would have won on appeal. *Smith v. Robbins*, 528

U.S. 259, 285 (2000).[7]

The district court held that the state habeas court's conclusion that Moreno could not

establish that his appellate counsel's performance prejudiced him was objectively reasonable.

According to the district court, the state habeas court could have reasonably concluded that there was

no reasonable likelihood that the Texas Court of Criminal Appeals would have reversed Moreno's

conviction had his Fourth Amendment claim been properly presented.

1

It is not reasonably debatable that the Texas habeas court could reasonably have concluded

that Moreno's appellate counsel was not ineffective in failing to ensure that the affidavit was included

in the appellate record. As an initial matter, on direct review, the Texas Court of Criminal Appeals

observed that Moreno's trial counsel had objected to the admission of the affidavit and had the

opportunity and obligation to ensure that the trial court ruled on its admissibility. *Moreno*, 858

---

[7] The state habeas court relied on this court's opinion in *Goodwin v. Johnson*, 132 F.3d 162, 174 (5th Cir. 1997) (requiring petitioner claiming ineffective assistance of appellate counsel to demonstrate this his *trial* was fundamentally unfair), and denied Moreno's claims of ineffective assistance of appellate counsel on the basis that Moreno could not establish that it rendered his *trial* unfair or unreliable. The State conceded before the district court that the state habeas court's application of *Strickland* was contrary to the Supreme Court's subsequent decision in *Smith v. Robbins*. Accordingly, the district court proceeded to consider whether the state habeas court's ultimate conclusion that Moreno's ineffective assistance of counsel claim was without merit was objectively reasonable.

Even though a state court may apply an incorrect legal standard, a federal habeas court must still determine whether the state court's ultimate conclusion—that Moreno did not have a meritorious *Strickland* claim—is objectively unreasonable. *Pondexter v. Dretke*, 346 F.3d 142, 149 (5th Cir. 2003); *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc). In this circuit, we review only state court "decisions" and not the opinion explaining that decision. *Id.*

13

S.W.2d at 461-62. Yet Moreno has not raised a claim of ineffective assistance of trial counsel in his habeas corpus petition.

In an effort to remedy the error, Moreno's appellate counsel moved in the Texas Court of Criminal Appeals to supplement the record to include the affidavit. The court denied the motion. Moreno's appellate counsel later moved to amend the record on appeal to include a newly found transcript of a portion of the proceedings below. The court granted this motion. Following the issuance of the Court of Criminal Appeals' opinion affirming his conviction, Moreno's appellate counsel moved for rehearing on the ground that the affidavit was in fact admitted by the trial court and should be part of the record on appeal. This motion was denied.

Moreno argues that his appellate counsel should have attached the affidavit to the transcript in connection with this second motion. According to Moreno, had he done so, the Court of Criminal Appeals would have included the affidavit in the record on appeal and ruled on his Fourth Amendment claim. Moreno's argument is belied by the fact that the Court of Criminal Appeals had previously expressly declined to permit him to supplement the record to include the affidavit in question. Moreno does not explain why the Court of Criminal Appeals would have reconsidered this ruling. Because Moreno's counsel moved to supplement the record on appeal to include the affidavit in question, Moreno's argument that his appellate counsel was ineffective for failing to ensure that the affidavit was included is meritless. The record establishes that Moreno's counsel made repeated efforts to supplement the record to include the warrant and affidavit in question.

2

Even assuming that Moreno's appellate counsel could have ensured that the affidavit was made a part of the record on appeal, Moreno has not established that he has suffered prejudice from

14

his counsel's performance. To meet *Strickland*'s second prong, Moreno must establish a reasonable probability that the Texas Court of Criminal Appeals would have ruled in his favor on his Fourth Amendment claim. We conclude, however, that there is no reasonable likelihood that he would have prevailed on this claim on direct appeal and that this conclusion is not reasonably debatable.

Moreno argues that the search warrant was invalid because Officer Marin's affidavit contained materially false statements. Ordinarily, evidence obtained from a search is admissible where probable cause for a search warrant is founded on inaccurate information, so long as the officer's reliance on the warrant is objectively reasonable. *See United States v. Leon*, 468 U.S. 897, 919-20 (1984). One exception to this rule is where the affidavit that supports the warrant contains material false statements or omissions. *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). A misstatement can vitiate an affidavit only where the misrepresentations are the product of "deliberate falsehood or of reckless disregard for the truth." *Id.* at 171. The court must then consider whether the remaining portion of the affidavit is sufficient to support a finding of probable cause. *Id.* at 155-56; *United States v. Brown*, 298 F.3d 392, 395 (5th Cir. 2002); *Cates v. State*, 120 S.W.3d 352, 358-59 (Tex. Crim. App. 2003). After omitting all intentional or reckless falsehoods, the issue is whether the affidavit contains facts from which the magistrate could make an informed and independent judgment as to whether probable cause existed and whether there was a substantial basis for his determination that probable cause did exist. *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983); *Janecka v. State*, 739 S.W.2d 813, 825 (Tex. Crim. App. 1987).

The affidavit supporting the search warrant was sworn to by Officer Sal Marin. According to the affidavit, Marin had found Cruz's body in a grave off of Wing Road in Bexar County. The body had a gunshot wound to the head. Richard Stengall, a ballistics examiner, stated after examining

15

the bullet recovered from Cruz's head that it was his professional opinion that it was fired from a .44 caliber Charter Arms Bulldog revolver. Another police officer had relayed a tip from a confidential informant to Marin that Jose Moreno owned a .44 caliber Charter Arms Bulldog revolver, that Moreno carried the weapon in his waistband, and that Moreno lived in a particular house in San Antonio. That same police officer informed Marin that the same gun had been seen by the informant in Moreno's house. Marin further swore that he had checked the "Master Name File of the Bexar County Criminal Justice Information System and . . . verified that the informant ha[d] no arrest record." Marin swore that the informant had listened to a tape of the phone call in which Moreno made his ransom demand on Cruz's parents and had identified Moreno as the caller. Finally, Marin swore that Moreno was in charge and control of a particular 1978 Chevrolet Blazer and his San Antonio house.

First, Moreno claims Officer Marin had no personal knowledge of the events surrounding the informant's identification of Moreno as the person on the police recording of the ransom calls. In the affidavit, Officer Marin merely states the informant identified Moreno and does not claim to have been present at the time this was done. There was therefore no false statement. At worst, Marin failed to disclose that another officer was present when the informant identified Moreno's voice and that this officer relayed the information to Marin. Probable cause may be and often is founded on hearsay. *Janecka v. State*, 937 S.W.2d 456, 462 (Tex. Crim. App. 1996). The veracity and basis of knowledge of the person supplying the hearsay information are relevant considerations in evaluating whether probable cause exists. *Gates*, 462 U.S. at 233. The officer who was actually present during the voice identification was Officer Salvador Gonzales. Texas courts presume that a police officer is a reliable source and no special showing is required for a magistrate to rely on their hearsay

16

declarations. *Marquez v. State*, 725 S.W.2d 217, 233 (Tex. Crim. App. 1987), *overruled on other grounds*, *Moody v. State*, 827 S.W.2d 875, 892 (Tex. Crim. App. 1992); *Barton v. State*, 962 S.W.2d 132, 143 (Tex. App. —Beaumont 1997, pet. ref'd) (Burgess, J., concurring and dissenting); *Kolbert v. State*, 644 S.W.2d 150, 153 (Tex. App. —Dallas 1982, no pet.). Moreno presents no argument that Officer Gonzales was not a credible source for Marin or the magistrate to rely on. He has therefore not shown that had the magistrate been informed that Gonzales, not Marin, was present during the investigation that probable cause would be lacking.

Second, Moreno claims that Marin was reckless with regard to the truth when he swore that the Bexar County Medical Examiner expert's professional opinion was that the bullet removed from Cruz's head came from a .44 caliber Charter Arm Bulldog revolver. The Medical Examiner's report actually stated that the bullet was "most probably" fired from a .44 caliber Charter Arms Bulldog revolver. Moreno argues that an expert's opinion that a bullet was "most probably" fired from a .44 caliber Charter Arms Bulldog revolver is inconsistent with that being his "professional opinion." According to Moreno, a "professional opinion" implies 100% certainty. Moreno's reading of the affidavit is untenable. It is commonly understood that a "professional opinion" does not imply absolute certainty.

Third, Moreno argues that the affidavit's statement that Moreno carried the gun in question in his waistband was false because Officer Gonzales later testified that the informant had stated that Moreno did not carry a weapon. Officer Gonzales also testified, however, that two days after the informant told him that Moreno did not carry a weapon, the informant stated that he had seen Moreno carrying a .44 caliber pistol. There is therefore no evidence that the statement in the affidavit was false.

Fourth, Moreno argues that the affidavit erroneously states that the car and house to be searched were in his charge and control. Moreno states that the car and house were actually under the control of his father, Elias Moreno. He cites no evidence in support of this assertion, and he does not dispute that he lived at the named address. Nor does Moreno argue that probable cause would have been lacking had the affidavit stated that Elias Moreno owned the house while Jose Moreno resided there.

Finally, Moreno argues that the statement that Marin had "checked the Master Name File of the Bexar County Criminal Justice Information System and has verified that the informant has no arrest record" is false. He argues that the Master Name File is not an exhaustive method of determining whether a person has an arrest record. Moreno cites no evidence, however, that suggests that the informant had an arrest record. Nor does the affidavit state that the Master Name File was the only source used to verify the informant's arrest record. There is therefore no evidence that the statement was false.

Moreno also argues that it was not Marin who "checked the Master Name File," but Officer Gonzales. During the state court hearing on the motion to suppress, Marin testified that it was Officer Gonzales who actually performed the background check on the informant. Assuming that Marin's statement that he verified the informant's background is false, the affidavit also contained the unchallenged statement that the informant had lived in the community his entire life, was gainfully employed, supplied information about the make of Moreno's firearm before any officer mentioned that Cruz was shot with a .44 caliber Charter Arms revolver, and identified Moreno as the voice of the kidnapper. Under the totality of the circumstances, these facts provided probable cause for issuance of the warrant, even after omitting information about the informant's arrest record.

18

Accordingly, we conclude that there was no reasonable likelihood that the Texas Court of Criminal Appeals would have held that the murder weapon should have been suppressed in this case. The district court's decision on this point is not reasonably debatable.

E

Moreno argues that his appellate counsel was ineffective for not challenging the jury instruction regarding "intent." The state trial judge instructed the jury that it could convict Moreno if he acted knowingly or intentionally. The court defined those terms as follows:

> A person acts intentionally or with intent, *with respect to the nature of his conduct* with the result of his conduct, when it is his conscience objective or desire to *engage in the conduct* or cause the result.
> A person acts knowingly, or with knowledge, *with respect to the nature of his conduct* or to circumstances surrounding his conduct when he is aware of the nature of the conduct or that the circumstances exist. A person acts knowingly, or with knowledge with respect to the result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

(emphasis added). Although this instruction tracks the language of Texas Penal Code § 6.03, shortly after affirming Moreno's conviction on direct appeal, the Texas Court of Criminal Appeals held that this instruction was erroneous in intentional murder cases. *Cook v. State*, 884 S.W.2d 485 (Tex. Crim. App. 1994). Under *Cook*, a jury in an intentional murder case should be instructed that the defendant must have acted knowingly or intentionally with respect to the "result of his conduct" to be convicted. That is, Moreno must have intended or known that his victim would die. Moreno argues that the instruction given in this case also permitted the jury to convict if it found that he had a culpable mental state with respect to the "nature of his conduct." Under Texas law, where specific acts are criminalized because of their very nature, a culpable mental state must apply to committing the act itself. *Cook*, 884 S.W.2d at 487. Gambling is one example of a "nature of conduct" offense. *Washington v. State*, 930 S.W.2d 695, 699 (Tex.App. - El Paso 1996, no pet.)

19

The State concedes that the instruction was erroneous under *Cook*. Even under *Cook*, however, such an error does not require automatic reversal. *Id.* at 491-92. Because his trial counsel did not object to the instruction, Moreno concedes that he was required to demonstrate "egregious harm" for his conviction to be reversed on this ground on direct appeal. Moreno argues that the jury may have erroneously convicted him after finding that he knew that the "nature of his conduct" would result in his victim's death, but that he lacked intent to produce that result.

The district court rejected this argument because the evidence permitted no serious dispute as to whether Moreno, if he committed the offense, intended to cause the death of his victim. Moreno confessed to digging a grave, repeatedly attempting to kidnap his victim, handcuffing him, taking him to the grave, and shooting him in the head three times. Moreno points to no evidence that would tend to suggest that he did not intend to cause his victim's death. It is not reasonably debatable that Moreno could have demonstrated "egregious harm" in his direct appeal. Accordingly, his counsel was not ineffective for failing to raise the issue on appeal.

The district court also rejected Moreno's argument because when the entire jury instruction is read as a whole, it required the jury to find that Moreno intended to cause his victim's death. After giving the erroneous instruction, the trial court clarified that the jury must find that Moreno "did intentionally cause the death of" Cruz to return a guilty verdict. The *Cook* court observed that it is appropriate to consider the extent "to which the culpable mental states were limited by the application portions of the jury charge." *Cook*, 884 S.W.2d at 492 n.6. Under nearly identical circumstances, the Houston Division of the Texas Court of Appeals has held that this subsequent instruction adequately limits the jury's consideration to the defendant's mental state with respect to the result of his conduct. *White v. State*, C14-92-01044, 1994 WL 684364 (Tex.App.-Houston [14th Dist.]

20

1994, no pet.) (unpublished). Similarly, the San Antonio division has held that where the erroneous instruction was limited in the application portion of the instruction, the defendant could not demonstrate egregious harm, even though the defendant argued that he was guilty only of involuntary manslaughter. *Ybarra v. State*, 890 S.W.2d 98, 107 (Tex.App.-San Antonio 1994, pet. ref'd).

Finally, Moreno's counsel was not ineffective because under the law at the time of his appeal, the jury instruction was correct.[8] The controlling decision by the Texas Court of Criminal Appeals held that the application portion of the instruction rendered irrelevant the erroneous definition portion. *Kinnamon v. State*, 791 S.W.2d 84, 89 (Tex. Crim. App. 1990), *overruled by Cook*, 884 S.W.2d at 491. Although Moreno's counsel could have argued on appeal for the change in law that the *Cook* court eventually adopted, it would not be unreasonable to conclude that the failure to anticipate this change in Texas law was deficient. *See Ybarra*, 890 S.W.2d at 113 (the failure of trial counsel to object to this instruction prior to *Cook* not ineffective because "[c]ounsel had no crystal ball to forecast the overruling of *Kinnamon*").

III

Moreno has failed to show that jurists of reason could debate the district court's resolution of his habeas petition. Accordingly, we AFFIRM the district court's denial of habeas relief and DENY the motion for a certificate of appealability.

---

[8] We note that despite the State's concession that the jury instruction was in error, the instruction may have been correct even under *Cook*. *Cook* stated in dicta that the situation is more complicated for capital murder because every capital murder has a "result of conduct" element and also an aggravating feature that involves some other element of conduct. *Cook*, 884 S.W.2d at 489 n.3. In this case, the aggravating factor was that Moreno kidnaped his victim. Under Texas law, kidnaping is a "nature of the conduct" offense. *Patrick v. State*, 906 S.W.2d 481, 491 (Tex. Crim. App. 1995). Accordingly, it may not have been error for the trial court to give the jury the definition of intent with respect to both "result of conduct" and "nature of conduct" offenses.