# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
February 9, 2011

No. 09-40925

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOHNNIE DOGGINS,

Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Texas

Before HIGGINBOTHAM, SMITH, and ELROD, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Johnnie Doggins was convicted of two counts of distributing a controlled substance and one count of possession of over fifty grams of a mixture containing cocaine, all in violation of 21 U.S.C. 841(a)(1). He challenges the denial of his suppression motion, the sufficiency of the evidence, and the calculation of his sentence. He also argues that he received ineffective assistance of counsel dur-

No. 09-40925

ing the suppression hearing and that the district court erred by refusing to reopen the suppression hearing to allow him to testify.

I.

On July 30, 2007, police used a confidential informant to buy cocaine from Doggins. The informant was driving with an undercover agent when they met Doggins in a parking lot. The informant approached Doggins's car and bought one rock of cocaine for $20. As the informant was walking away, he turned around, went back to Doggins, complained about the quality of the rock, and purchased a second rock for $20. Both transactions were caught on videotape. Shortly thereafter, the undercover agent noticed the same car at Doggins's home.

On August 16, 2007, after confirming that the rocks contained cocaine, the police obtained a search warrant for Doggins's house.[1] They executed the warrant the next day, discovering drugs and a collection of drug paraphernalia. Later testing showed that the drugs included 60.63 grams of crack cocaine and 14.65 grams of powder cocaine, but the initial police report indicated that there were 38.4 grams of crack cocaine and 27.069 grams of powder cocaine.

II.

On February 8, 2008, Doggins moved to suppress the drugs found at his house. After a hearing on April 30, 2008, the district court denied the motion, holding that the good-faith exception applied because the police were objectively reasonable in relying on the search warrant. On September 15, 2008, Doggins moved to reopen the suppression hearing, complaining for the first time that his

---

[1] On August 15, 2007, the police obtained an arrest warrant for Doggins, but that warrant was not executed. The police obtained both warrants with affidavits from Investigator Green, who had overseen the cocaine purchases.

No. 09-40925

attorney, Denise Benson, had not allowed him to testify.[2] After hearing testimony from Benson and Doggins, the court concluded that Doggins had never asked to testify, so it denied the motion. On November 12, 2008, Doggins submitted letters allegedly showing that he had written Benson in March 2008 with a request to testify, and on February 20, 2009, he filed a final motion to reopen the suppression hearing.

The court denied that motion as well, and the jury found Doggins guilty on all counts after a three-day trial. The court sentenced Doggins to the twenty-year statutory minimum for distribution of over fifty grams of cocaine base by a defendant with a prior drug felony. 21 U.S.C. § 841(b)(1)(A) (2009).

III.

Doggins contends that the district court erred by refusing to reopen the suppression hearing to allow him to testify. To prevail, he must show an abuse of discretion. *United States v. Hassan*, 83 F.3d 693, 696 (5th Cir. 1996). According to Doggins, the court should have reopened the hearing because Benson refused to allow him to testify at the first hearing despite his repeated requests to do so. The basis of his argument is two handwritten letters to Benson in which he requested to testify, dated March 14 and 26, 2008. Doggins did not present those letters at the hearing on his first motion to reopen, however, despite requests from the court that he present evidence showing that he had asked to testify. Instead, he provided the letters almost two months later and nearly six months after the suppression hearing, casting doubt on their authenticity. The court did not abuse its discretion by discounting the evidentiary value of the letters.

Moreover, the court noted that Doggins was present in the courtroom

---

[2] By this time, Benson no longer represented Doggins, because the court had granted Doggins's motion to appoint new counsel.

No. 09-40925

throughout the suppression hearing and easily could have asked the court to let him testify if he had so desired. The court thus had good reason to find Benson credible when she testified that Doggins never asked to testify and that if he had, she would have allowed him to do so. Doggins presents no evidence to challenge Benson's credibility, and we will not second-guess it on appeal. The court did not abuse its discretion by refusing to reopen the suppression hearing.

IV.

Doggins argues that Benson provided ineffective assistance of counsel. To prevail, he must show that Benson's performance "fell below an objective standard of reasonableness" and that the deficient performance prejudiced his case. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). He alleges first that Benson was deficient by failing to let him testify at the suppression hearing. For the reasons listed above, however, we agree with the district court that Doggins did not request to testify.

Moreover, Benson had a legitimate reason for not putting Doggins on the stand: He had no firsthand knowledge of the search and would have nothing relevant about which to testify. Doggins insists that he could have shown that statements in the government's affidavits were false, but he provides no evidence that he had personal knowledge of those statements. Benson thus provided effective counsel at the suppression hearing.

Doggins also urges that Benson should have requested a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), to point out an inconsistency in the government's warrant affidavits. *Franks* held that a defendant can request a hearing to challenge the accuracy of statements used to procure a search warrant. To discredit the warrant, the defendant must show that an affidavit contained a false statement that is the product of "deliberate falsehood or of reckless disregard for the truth" and that the remaining truthful portion of the affidavit

4

is insufficient to support a finding of probable cause. *Moreno v. Dretke*, 450 F.3d 158, 169 (5th Cir. 2006). Doggins points out that the August 15 arrest warrant affidavit detailed only Doggins's first sale to Ricky, but the August 16 search warrant affidavit also included information about the second sale. A *Franks* hearing, he argues, could have explored that inconsistency.

Doggins's argument fails, because an objectively reasonable performance does not require requesting a *Franks* hearing over such a trivial inconsistency. The omission of the second incident in the first affidavit does not show the "deliberate falsehood or reckless disregard for the truth" necessary to prevail under *Franks*. *Moreno*, 450 F.3d at 169. Rather, it merely indicates that the government needed only one incident to show probable cause to arrest Doggins, while it mentioned multiple sales in the search warrant affidavit to show that Doggins was a large distributor and would likely have drugs at his house. Benson's decision not to raise such a frivolous argument was not deficient.

V.

Doggins maintains that the district court erred by denying his motion to suppress. When evaluating a motion to suppress, the court first must determine whether the searching officers acted "in objectively reasonable good-faith reliance upon a search warrant." *United States v. Pena-Rodriguez*, 110 F.3d 1120, 1130 (5th Cir. 1997). Only if they did not act in good faith must the court consider whether probable cause existed. *Id.* Doggins does not challenge the holding that the officers acted in good faith. We thus need not reach his arguments on probable cause, and we uphold the denial of the suppression motion.

VI.

Doggins contends that the evidence did not support the jury's conclusion that he sold drugs to the informant twice on July 30, 2007. That argument fails,

because both transactions are on video. Doggins points to the undercover agent's deposition, in which he mistakenly stated that Doggins started to pull out of the parking lot before the informant returned to make the second purchase, when in fact the video showed that Doggins remained parked. That contradiction, which the agent later explained resulted from his faulty memory, in no way casts doubt on the video, which provided ample evidence to support the verdict beyond a reasonable doubt.

Doggins also avers that there was insufficient evidence to prove the chain of custody for the 60.63 grams of cocaine found at his house. According to Doggins, the drugs recovered there on August 17 came to the drug lab in two shipments, and the government cannot explain why the drugs were separated into two batches. That assertion misreads the testimony of the officer receiving the evidence, who stated that the drugs came in one batch and that the other batch was the drugs Doggins sold to the informant on July 30.

Doggins also points out that the government did not identify the officer who picked up the drugs from his house. Sergeant Davis testified that the drugs were set on the front porch of the house and that he later watched an officer load the drugs into Officer Bell's police car. Bell testified that he drove the evidence to the crime lab, where Officer Harrison logged it in. There is no evidence, however, that Davis watched the drugs the entire time they were on the porch, so there is a small gap in the chain of custody.

Missing links in the chain of custody go "to the weight and not the admissibility" of evidence and are "properly left to consideration by the jury." *United States v. Ellis*, 547 F.2d 863, 868 (5th Cir. 1977). "In assessing the sufficiency of evidence, we do not evaluate the weight of the evidence or the credibility of witnesses, but view the evidence in the light most favorable to the verdict, drawing all reasonable inferences to support the verdict." *United States v. Delgado*, 256 F.3d 264, 273-74 (5th Cir. 2001). Viewing the evidence in the light most

No. 09-40925

favorable to the verdict, a rational jury could have found that the chemists's report was sufficient to conclude Doggins possessed more than fifty grams of crack, despite the possible breach in the chain of custody. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Mann*, 493 F.3d 484, 492 (5th Cir. 2007).

Finally, Doggins asserts that the estimate in the police report that there was 38.4 grams of crack cocaine and 27.069 grams of powder cocaine shows that the sample at trial was not the one recovered from his house.[3] The estimate was merely a preliminary calculation that was later proven to be inaccurate. It does not provide sufficient reason to doubt the jury's finding that there was more than 50 grams of crack cocaine taken from the house.

VII.

Doggins contends the district court erred by not considering the 18 U.S.C. § 3553(a) reasonableness factors when imposing the statutory mandatory minimum sentence. The district court does not have power to sentence below a statutory minimum, however, so Doggins has already received the lowest possible sentence. *See United States v. Gomez-Herrera*, 523 F.3d 554, 559 (5th Cir. 2008).

Doggins argues that the court applied a statute that has been repealed. Congress passed the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372, after Doggins was sentenced and had filed his appeal. As a result of that act, § 841(b)(1)(A) now requires that a defendant possess over 280 grams of crack cocaine, rather than 50 grams, for the 20-year mandatory minimum to apply. Doggins claims that the act is retroactive and that he should be resentenced under the new statute. That argument is without merit, however, because the Savings Statute, 1 U.S.C. § 109, provides that the reduction of any criminal sentence will not apply retroactively unless the relevant act expressly so states. The Fair

---

[3] The sample introduced at trial had 60.63 grams of crack cocaine and 14.65 grams of powder cocaine.

No. 09-40925

Sentencing Act does not so state, so it does not apply retroactively.[4]

Doggins asserts that the Savings Statute does not apply to changes to remedies or procedures. *See United States v. Blue Sea Line*, 553 F.2d 445, 447-50 (5th Cir. 1977).  But, contrary to Doggins's assertions, the Fair Sentencing Act imposes a change in sentencing, not a procedural or remedial change.  *Bell*, 624 F.3d at 815 ("No procedures or remedies were altered by the passage of the FSA.").  The Fair Sentencing Act thus does not apply.

The conviction and sentence are AFFIRMED.

---

[4] *See United States v. Lewis*, 625 F.3d 1224, 1228 (10th Cir. 2010); *United States v. Brewer*, 624 F.3d 900, 909 n.7 (8th Cir. 2010); *United States v. Bell*, 624 F.3d 803, 814-15 (7th Cir. 2010); *United States v. Gomes*, 621 F.3d 1343, 1346 (11th Cir. 2010) (per curiam); *United States v. Carradine*, 621 F.3d 575, 580 (6th Cir. 2010).