# IN THE COURT OF APPEALS OF IOWA

No. 16-1559
Filed October 11, 2017

**JOHNNY TERRELL CLAYTON,**
Plaintiff-Appellant,

**vs.**

**IOWA DISTRICT COURT FOR SCOTT COUNTY,**
Defendant-Appellee.
_____

Appeal from the Iowa District Court for Scott County, Mark D. Cleve, Judge.

Petition for writ of certiorari challenging the denial of a motion to correct illegal sentence. **WRIT ANNULLED.**

Les M. Blair III of Blair & Fitzsimmons, P.C., Dubuque, for appellant.

Thomas J. Miller, Attorney General, and Kelli Huser, Assistant Attorney General, for appellee.

Considered by Danilson, C.J., and Tabor and McDonald, JJ.

**MCDONALD, Judge.**

In September 2010, Johnny Clayton was convicted as a habitual offender of robbery in the second degree, in violation of Iowa Code sections 711.1 and 711.3 (2009), and assault while participating in a felony, in violation of section 708.3. The district court sentenced Clayton to concurrent fifteen-year terms of incarceration. The facts and circumstances of the case are set forth in two prior unsuccessful appeals but are immaterial to the resolution of this appeal. *See State v. Clayton*, No. 14-0034, 2015 WL 582017, at *3 (Iowa Ct. App. Feb. 11, 2015) (affirming denial of motion to correct illegal sentence based on defendant's contention he was not habitual offender); *State v. Clayton*, No. 10-1736, 2011 WL 2565658, at *2 (Iowa Ct. App. June 29, 2011) (preserving claim of ineffective assistance of counsel).

In 2016, the General Assembly amended the sentencing statute for robbery in the first or second degree. *See* 2016 Iowa Acts ch. 1104, § 8. In the prior sentencing scheme, those defendants, like Clayton, convicted of robbery in the first or second degree were required to serve seven tenths, or seventy percent, of the maximum term of the person's sentence before becoming eligible for parole or work release. *See* Iowa Code § 902.12(5) (2009). The new law affords some sentencing discretion to the sentencing court, changing the mandatory minimum sentence for robbery in the first or second degree from seventy percent to "between one-half and seven-tenths" of the maximum term of the defendant's sentence. *Compare* Iowa Code § 902.12(5) (2009), *with* Iowa Code § 902.12(3) (2016). This change in the law applies to convictions "that occur[red] on or after July 1, 2016." *See* 2016 Iowa Acts ch. 1104, § 8.

In July and August 2016, Clayton filed two "motions to reduce minimum mandatory and resentence," contending the change in the sentencing law should be applied retroactively to his sentence for robbery in the second degree. In substance, the motions were treated as motions to correct an illegal sentence. The district court denied Clayton's motions. Clayton timely filed his notice of appeal. However, there is no appeal as a matter of right from the denial of a motion to correct illegal sentence. *See State v. Propps*, 897 N.W.2d 91, 96 (Iowa 2017). The supreme court ordered Clayton's notice of appeal be treated as a petition for writ of certiorari and, at its discretion, granted the petition. The supreme court then transferred Clayton's case to this court for disposition on the merits.

The question presented is a narrow one. Clayton concedes the sentencing amendment is not retroactive. He contends, however, the failure to apply the ameliorative sentencing statute retroactively violates his right to equal protection under the United States and Iowa Constitutions. *See* U.S. Const. amend XIV; Iowa Const. art. I, § 6. A claim of an illegal sentence is ordinarily reviewed for correction of errors at law. *See State v. Hoeck*, 843 N.W.2d 67, 70 (Iowa 2014). However, we review constitutional claims de novo. *See State v. Kout*, 854 N.W.2d 706, 708 (Iowa Ct. App. 2014).

The Fourteenth Amendment to the United States Constitution provides, in part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." Article I, section 6

of the Iowa Constitution provides: "All laws of a general nature shall have a uniform operation; the general assembly shall not grant to any citizen or class of citizens, privileges or immunities, which, upon the same terms shall not equally belong to all citizens." *See also* Iowa Const. art. I, § 1 ("All men and women are, by nature, free and equal . . . ."); *id.* art. I, § 2 (recognizing "[a]ll political power is inherent in the people" and "[g]overnment is instituted for the protection, security, and benefit of the people").

The essential promise of equal protection is that "all persons similarly situated should be treated alike." *Racing Ass'n of Cent. Iowa v. Fitzgerald*, 675 N.W.2d 1, 7 (Iowa 2004). "More precisely, 'the equal protection guarantee requires that laws treat all those who are similarly situated with respect to the purposes of the law alike.'" *Nguyen v. State*, 878 N.W.2d 744, 757 (Iowa 2016) (quoting *Varnum v. Brien*, 763 N.W.2d 862, 883 (Iowa 2009)). "Although we have 'generally applied the same analysis to federal and state equal protection claims, [Iowa appellate courts have] not foreclosed the possibility that there may be situations where differences in the scope, import, or purpose of the two provisions warrant divergent analyses.'" *Id.* (quoting *In re Det. of Hennings*, 744 N.W.2d 333, 338 (Iowa 2008)). However, absent an argument to the contrary, we generally decline to apply divergent analyses under the two constitutions. *See, e.g., State v. Wade*, 757 N.W.2d 618, 624 (Iowa 2008). Here, Clayton makes no argument for a different standard under the Iowa Constitution.

"The first step in an equal-protection analysis is to determine the appropriate standard of review." *State v. Biddle*, 652 N.W.2d 191, 202 (Iowa 2002). "Unless a suspect class or fundamental right is involved, any

classification made by the legislature need only have a rational basis." *Id.*; *see Heller v. Doe*, 509 U.S. 312, 319–20 (1993) ("[A] classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity [and] cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose.").

> Under the rational basis test, "[t]he plaintiff has the heavy burden of showing the statute unconstitutional and must negate every reasonable basis upon which the classification may be sustained." In deference to the legislature, a statute will satisfy the requirements of the equal protection clause
>
>> "so long as there is a plausible policy reason for the classification, the legislative facts on which the classification is apparently based rationally may have been considered to be true by the governmental decisionmaker, and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational."
>
> Although the rational basis test is "deferential to legislative judgment, 'it is not a toothless one' in Iowa." The rational basis test defers to the legislature's prerogative to make policy decisions by requiring only a plausible policy justification, mere rationality of the facts underlying the decision and, again, a merely rational relationship between the classification and the policy justification. Nonetheless, the deference built into the rational basis test is not dispositive because this court engages in a meaningful review of all legislation challenged on equal protection grounds by applying the rational basis test to the facts of each case.

*Varnum*, 763 N.W.2d at 879 (citations omitted).

Clayton does not contend this is a case involving fundamental rights or suspect classification. We therefore proceed under rational-basis review. *See also State v. Ceaser*, 585 N.W.2d 192, 196 (Iowa 1998) (determining consideration of section 902.12 does not implicate a suspect classification),

*overruled on other grounds by State v. Bruegger*, 773 N.W.2d 862, 871 (Iowa 2009).

The "threshold" test in any equal protection analysis is to determine whether the plaintiff is in fact similarly situated to the class of persons receiving differential treatment. *See Robbins v. Becker*, 794 F.3d 988, 996 (8th Cir. 2015); *Kout*, 854 N.W.2d at 708 ("A demonstration that people are similarly situated is a threshold test; failure to make this showing requires no further consideration of the alleged equal protection violation." (citing *Varnum*, 763 N.W.2d at 882)); *see also Roubideaux v. N.D. Dep't of Corrs. & Rehab.*, 570 F.3d 966, 974 (8th Cir. 2009) (stating "[t]he similarly situated inquiry focuses on whether the plaintiffs are similarly situated to another group for purposes of the challenged government action"). Clayton argues he, as a person convicted of second-degree robbery prior to July 1, 2016, is similarly situated to any person convicted of second-degree robbery on or after July 1, 2016. As such, he argues, he is entitled to be treated alike under the amendment to section 902.12.

We conclude Clayton is not similarly situated to those persons not-yet convicted of robbery in the first or second degree as of July 1, 2016. His conviction was final on the date the law went into effect. "Our supreme court and the U.S. Supreme Court have both upheld classifications of litigants based on the status of their case—i.e., whether a litigant's direct appeal was made final before or after—a change in the law." *Hillman v. State*, No. 14-0158, 2015 WL 5278929, at *3 (Iowa Ct. App. Sept. 10, 2015). More specifically, our case law recognizes finality as a material distinction between classes of defendants for the purposes of determining whether a change in law should be made retroactive.

*See Nguyen*, 878 N.W.2d at 758; *Everett v. Brewer*, 215 N.W.2d 244, 247 (Iowa 1974) ("[T]here is a rational basis for classifying appellants in accordance with whether their claim previously has been fully considered and adjudicated."). Because Clayton is not similarly situated to those defendants convicted on or after July 1, 2016, his equal protection argument fails. *See Varnum*, 763 N.W.2d at 882 ("[I]f plaintiffs cannot show as a preliminary matter that they are similarly situated, courts do not further consider whether their different treatment under a statute is permitted under the equal protection clause.").

Even if Clayton were similarly situated to those convicted of robbery in the first or second degree after July 1, 2016, his equal protection claim would still fail. "The rational basis test defers to the legislature's prerogative to make policy decisions by requiring only a plausible policy justification, mere rationality of the facts underlying the decision and, again, a merely rational relationship between the classification and the policy justification." *Id.* at 879 (citations omitted). Sentencing is a legislative function. We afford broad deference to the legislature in setting the penalties for criminal conduct and in determining when the penalties are to go into effect. *See State v. Cronkhite*, 613 N.W.2d 664, 669 (Iowa 2000) ("Substantial deference is afforded the legislature in setting the penalty for crimes."); *State v. Jackson*, 204 N.W.2d 915, 917 (Iowa 1973); *State v. Stanley*, 344 N.W.2d 564, 567 (Iowa Ct. App. 1983). There is a strong policy justification for making ameliorative sentencing provisions prospective only. Beyond the administrative and financial burden of resentencing offenders, the State has a strong policy interest both in maintaining the integrity of sentences that were valid when imposed and in promoting the finality of sentences. *See*

*Nguyen*, 878 N.W.2d at 758; *see also People v. Mora*, 154 Cal. Rptr. 3d 837, 842 (Cal. Ct. App. 2013); *Burch v. Tennessee Dep't of Corr.*, 994 S.W.2d 137, 139 (Tenn. Ct. App. 1999). Clayton has not carried his burden in negating these plausible policy justifications for the legislature choosing to make the sentencing provision at issue prospective only.

Our conclusion there is no equal protection violation here is reinforced by persuasive authority. Our sister states conclude equal protection principles do not require ameliorative sentencing provisions to be applied retrospectively. *See, e.g., Ex parte Zimmerman*, 838 So. 2d 408, 410–11 (Ala. 2002) ("[A] reduction of sentences only prospectively from the date a new sentencing statute takes effect is not a denial of equal protection" (citing 16B C.J.S. Constitutional Law § 777 (1985))); *People v. Morales*, 371 P.3d 592, 597 (Cal. 2016) ("[A]mici curiae argue that principles of equal protection mandate treating those resentenced under [amended law] the same as those originally sentenced under [old law]. We disagree. The two situations are different. . . . The purpose behind [the old law] is irrelevant here. Accordingly, persons resentenced under [the amended law] are not situated similarly to those sentenced under [the old law]. . . . Sentencing changes ameliorating punishment need not be given retroactive effect."); *Carter v. State*, 512 N.E.2d 158, 170 (Ind. 1987) (holding a defendant sentenced before an amendment goes into effect is not denied equal protection by being sentenced under the statute in place prior to the amendment); *Bowen v. Recorder's Court Judge*, 179 N.W.2d 377, 378 (Mich. 1970) (same); *Burch*, 994 S.W.2d at 139 (same).

In an analogous situation, federal courts facing challenges to the non-retroactivity of the Fair Sentencing Act (FSA) have concluded nothing compels ameliorative sentencing relief be applied retrospectively. *See Dorsey v. United States*, 567 U.S. 260, ___ (2012) (holding the FSA could be applied retroactively for those who had not yet been sentenced); *United States v. Reevey*, 631 F.3d 110, 113–15 (3d Cir. 2010) (holding the FSA is inapplicable to those already sentenced); *United States v. McAllister*, 401 Fed. Appx. 818, 820 (4th Cir. 2010) (per curiam) (same); *United States v. Doggins*, 633 F.3d 379, 384 (5th Cir. 2011) (same); *United States v. Bell*, 624 F.3d 803, 814–15 (7th Cir. 2010), cert. denied, 131 S.Ct. 2121 (2011) (same); *United States v. Brewer*, 624 F.3d 900, 909 n. 7 (8th Cir. 2010), cert. denied, 131 S.Ct. 1805 (2011) (same).

Clayton appears to recognize the law has a rational basis but argues application of the law retrospectively would better advance the purposes of the law when compared to prospective application only. Specifically, he contends the law was intended to reduce prison overcrowding and to reduce the disproportionate incarceration of African Americans and extending the law to persons whose convictions were final prior to enactment of the law would better advance these purposes. We reject the claim for three reasons.

First, Clayton's claim is merely an assertion unsupported by evidence regarding the purpose of the law or evidence regarding race and incarceration rates for those convicted of robbery in the first or second degree. Second, even assuming there was evidence of a racially disproportionate impact, a law that lacks a "racially discriminatory purpose" does not become unconstitutional "solely because it has a racially disproportionate impact." *Washington v. Davis*, 426

U.S. 229, 239 (1976).  Here, there was no evidence the legislature acted with discriminatory purpose in choosing to not make this relief available retroactively. The law applies equally to defendants of all races convicted before the effective date of the act.  In addition, to the extent Clayton argues the legislature engaged in discrimination in choosing to make the law only prospective,

> [t]his theory of discrimination also makes little sense.  Is it really possible that the same [legislature] that was deeply concerned about racial justice when looking at future sentences suddenly became racist when contemplating past sentences?  That is a heavy lift.  A more basic explanation exists for what [the legislature] did, and for what it failed to do . . . .  The government has a powerful interest in avoiding the disruption of final sentences.  [The legislature] did nothing extraordinary or for that matter discriminatory when it respected this interest.  It was merely sticking to . . . the ordinary practice in . . . sentencing, withholding [a] change from defendants already sentenced.

*United States v. Blewett*, 746 F.3d 647, 659 (6th Cir. 2013).  Third, the mere fact that the legislature might not have extended as much relief as possible does not mean the failure to extend such relief makes the law irrational and in violation of the right to equal protection.  Legislation is the progeny of the perfect policy and the politically possible.  We will not hold legislation unconstitutional merely because it was not perfect.  *See State v. Mitchell*, 757 N.W.2d 431, 438 (Iowa 2008) ("As long as the classificatory scheme chosen by [the legislature] rationally advances a reasonable and identifiable governmental objective, we must disregard the existence of other methods of allocation that we, as individuals, perhaps would have preferred.").

For the reasons above, we conclude Clayton failed to prove a violation of his right to equal protection as guaranteed by the federal and state constitution. The district court did not act illegally or otherwise err in denying Clayton's motions to correct an illegal sentence.

**WRIT ANNULLED.**