United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 27, 2007**

Charles R. Fulbruge III
Clerk

I n the

# United States Court of Appeals
## for the Fifth Circuit

———————

m 05-70038

———————

ERIC LYNN MOORE,

Petitioner-Appellee,

VERSUS

NATHANIEL QUARTERMAN,
DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
CORRECTIONAL INSTITUTIONS DIVISION,

Respondent-Appellant.

———————————————

Appeal from the United States District Court
for the Eastern District of Texas

———————————————

ON PETITION FOR REHEARING

Before SMITH, GARZA, and DENNIS,
   Circuit Judges.

PER CURIAM:

   Treating the petition for rehearing en banc
as a petition for panel rehearing, the petition
for panel rehearing is GRANTED. The prior

opinion, *Moore v. Quarterman*, 454 F.3d 484
(5th Cir. 2006), is WITHDRAWN, and the
following opinion is substituted:

Before SMITH, GARZA, and DENNIS,
    Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Eric Moore was convicted of capital murder and sentenced to death in 1991. In the wake of *Atkins v. Virginia*, 536 U.S. 304 (2002), he filed a successive petition for habeas corpus relief in state court, arguing that he is mentally retarded and thus ineligible for the death penalty. The petition was dismissed as an abuse of the writ by the Texas Court of Criminal Appeals ("TCCA").

This court granted Moore authorization to file a second federal habeas petition to raise an *Atkins* claim. The federal district court ultimately found him to be mentally retarded and accordingly granted the requested relief. But because Moore failed to exhaust the remedies available to him on his *Atkins* claim in state court, and because Texas's abuse-of-the-writ-doctrine would preclude him from filing another petition based on facts he inexcusably failed to develop,[1] we vacate and remand with instruction to dismiss the petition with prejudice.[2]

---

[1] *See* TEX. CODE CRIM. PROC. art. 11.071 § 5(a); *Ex parte Graves*, 70 S.W.3d 103, 114 (Tex. Crim. App. 2002); *Ex parte Kerr*, 64 S.W.3d 414, 418 (Tex. Crim. App. 2002).

[2] *See Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997) ("Procedural default . . . occurs when a prisoner fails to exhaust available state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.").

I.
A.

In December 1990 Moore and three other men broke into the home of Richard and Elizabeth Ayers, an elderly couple. The men robbed and shot the couple, killing Elizabeth Ayers and paralyzing Richard Ayers.

Moore was convicted of capital murder and sentenced to death in June 1991. He appealed his conviction and sentence, but the TCCA affirmed. *Moore v. State*, 882 S.W.2d 844 (Tex. Crim. App. 1994), *cert. denied*, 513 U.S. 1114 (1995). Moore then filed his first petition for habeas relief in state court, which was denied. *Ex parte Moore*, No. 38,670-01 (Tex. Crim. App. Nov. 25, 1998) (unpublished). His first federal habeas petition likewise was denied. *Moore v. Cockrell*, No. 99-CV-18 (E.D. Tex. Nov. 26, 2001). A few months after *Atkins* had been decided, we affirmed the denial of the initial petition. *Moore v. Cockrell*, No. 01-41489, 54 Fed. Appx. 591 (5th Cir. 2002) (table), *cert. denied*, 538 U.S. 965 (2003).[3]

B.

In *Atkins*, 536 U.S. at 321, the Court established for the first time that the execution of mentally retarded defendants violates the Eighth Amendment. After *Atkins* was decided, Moore filed a successive habeas petition in state court under TEX. CODE CRIM. PROC. art. 11.071 § 5(a), arguing that he is ineligible for the death penalty because he is mentally retarded and that this ground for relief was not available to him when he filed his first state habeas petition.[4]

---

[3] Neither Moore's initial state petition nor his initial federal petition requested relief on the basis of mental retardation.

[4] Article 11.071 § 5(a) states, in relevant part,
(continued...)

2

Moore asserted mental retardation as indicated by his score of 74 on an IQ test taken when he was in grade school, his placement in special education throughout his schooling, and his history of head injuries, at least one of which occurred when he was nine or ten years old. To substantiate these claims, he cited to the trial record but provided no other evidence. He requested an "opportunity to be evaluated" and an evidentiary hearing, but the TCCA dismissed the successive petition as an abuse of the writ, asserting that Moore's petition "fail[ed] to contain sufficient specific facts which would satisfy the requirements" of article 11.071 § 5(a). *Ex Parte Moore*, No. 38,670-02 (Tex. Crim. App. Feb. 5, 2003).

C.

Moore then sought permission from this court to file a second federal habeas petition. We allowed him to do so on the basis of 28 U.S.C. § 2244(b)(2)(A), finding that he had made a *prima facie* showing of entitlement to relief under *Atkins* sufficient to warrant further exploration of his claim. *In re Moore*, 67 Fed. Appx. 252 (5th Cir. 2003) (table). We noted, however, that "the facts surrounding Moore's

alleged retardation have not been developed, and the parties have presented scant factual or legal grounds for us to assess the procedural default issue" that was raised by the state as a defense. *Id*.

We directed the district court to perform its own review of the record to determine whether Moore had met § 2244's requirements for filing a successive habeas petition. If the district court was satisfied that those requirements had been met, it was instructed to consider the merits of Moore's claim and the state's defenses. *Id*.

D.

In his successive federal petition, unlike in his successive state petition, Moore lays out the three criteria used by the American Association on Mental Retardation ("AAMR") to diagnose mental retardation and alleges reasons why he satisfies each.[5] As in his state petition, he asserts that he scored a 74 on an IQ test when he was seven years old. He argues that this score indicates both subaverage intellectual functioning and an onset of retardation before age eighteen.[6] He also contends that

---

[4](...continued)
that

[i]f a subsequent application for a writ of habeas corpus is filed after filing an initial application, a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that: (1) the current claims and issues have not been and could not have been presented previously in a timely initial application or in a previously considered application filed under this article or Article 11.07 because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application . . . .

[5] The AAMR states that mental retardation "is characterized by [1] significantly subaverage intellectual functioning, existing concurrently with [2] related limitations in two or more of the following applicable adaptive skill areas: communication, self-care, home living, social skills, community use, self-direction, health and safety, functional academics, leisure, and work. [3] Mental retardation manifests before age 18." Mental Retardation: Definition, Classification, and Systems of Supports 5 (9th ed. 1992), *quoted in Atkins*, 536 U.S. at 309 n.3.

[6] Citing a psychiatric textbook, the *Atkins* Court, 536 U.S. at 309 n.5, noted that "an IQ be-
(continued...)

3

his poor performance in school and other events in his personal history that are a part of the trial record indicate a deficiency in the adaptive skill areas of functional academics, social skills, self-direction, and health and safety.[7]

On receiving Moore's successive petition, the federal district court ordered a stay of execution. Hoping to develop the record in advance of a hearing on the merits of his claim, Moore then moved the court to authorize his counsel to obtain "expert investigatory services," including a psychologist trained in the field of mental retardation and a mitigation investigator.

The district court denied the motion as premature and later denied the state's motion to dismiss the petition, agreeing with us that Moore had met the § 2244(b)(2)(A) requirements for filing a successive habeas petition. *Moore v. Johnson*, No. 03-CV-224 (E.D. Tex. May 15, 2003). Finding fault with the state court's application of article 11.071 § 5(a), the court granted Moore habeas relief, ordering the state to release him from custody unless, within 180 days, it reopened his state habeas petition and conducted a fact-finding hearing to determine whether he is entitled to relief under *Atkins*. *Moore v. Cockrell*, No. 03-CV-224 (E.D. Tex. July 28, 2003).

The state appealed, arguing that a district court can grant habeas relief only if it finds that a defendant is in custody in violation of the Constitution or laws or treaties of the United States. The state contended that the court's determination that the state had misapplied its own procedural rule was not sufficient. Moore cross-appealed, arguing that he is entitled to an evidentiary hearing in federal court on his claim of mental retardation and that his claim is not procedurally defaulted.

We agreed with the state and vacated, instructing the court to determine on remand whether Moore is entitled to an evidentiary hearing and, regardless of whether it held such a hearing, whether Moore's *Atkins* claim is procedurally defaulted. On a finding of no default, we directed the court to determine whether Moore is entitled to relief on the merits of his claim. *Moore v. Dretke*, 369 F.3d 844, 846 (5th Cir. 2004).

E.

In June 2004, the district court issued an order stating it already had decided, in refusing to alter or amend the now-vacated writ, that there was no procedural default. *Moore v. Dretke*, No. 03-CV-224 (E.D. Tex. June 8, 2004).[8] It granted an evidentiary hearing and,

---

[6](...continued)
tween 70 and 75 or lower . . . is typically considered the cutoff score for the intellectual function prong of the mental retardation definition."

[7] In his successive state petition, Moore did not contend that he is limited in two or more adaptive skill areas. He makes this particular claim for the first time in his federal petition. In addition, he attaches portions of his school records to his federal petition, a step he did not take when he filed his state petition.

[8] "A federal court may not consider a state prisoner's constitutional claim if the state courts based their rejection of that claim on an adequate and independent state ground." *Emery v. Johnson*, 139 F.3d 191, 194-95 (5th Cir. 1998). If a state court rejects a habeas petition based on a purely procedural ground, rather than on a consideration of the merits of the constitutional claim, the dismissal is independent of that claim. As long as the application of the procedural rule is adequate (i.e.,
(continued...)

4

in doing so, rejected the state's contention that Moore was not entitled to such a hearing under 28 U.S.C. § 2254(e)(2)(A) because he had failed factually to develop his *Atkins* claim in state court. The court held that § 2254(e)-(2)(A) did not strip Moore of his entitlement to an evidentiary hearing, because it determined that Moore was prevented from developing his claim by the state court's improper application of article 11.071 § 5(a). *Id.*

During the three-day hearing, Moore introduced the testimony of Dr. Antolin Llorente, a licensed psychologist who attested to Moore's substandard intelligence and limitations in adaptive skills. He opined—based on his own interaction with Moore (including his administration of an additional IQ test) and his interviews of family members, friends, teachers, and employers—that Moore is mentally retarded. Moore proffered the direct testimony of various family members and friends, most of whom indicated that Moore had been "slow" and incapable of handling some of the basic requirements of daily living from an early age.

The state countered with the testimony of Dr. Gary Mears, a licensed and board-certified psychologist who had examined Moore. Mears asserted that Moore has good communication and interpersonal skills and was capable of recalling with clarity his early childhood experiences, his academic and work histories, and his criminal record. Mears examined Moore's school and psychological testing records and concluded that although Moore is arguably of substandard intelligence, he is not deficient in any of the AAMR's enumerated adaptive skill areas. Mears noted that Moore had in fact made a reasonable effort to succeed in life.

The state also challenged the validity of Moore's IQ scores and emphasized that he had not in fact been in special education throughout his schooling. The state introduced the testimony of some of Moore's teachers, who believed that his poor performance in an academic setting was not on account of substandard ability, but because of his disinterest and his refusal to apply himself.

The state also proffered the testimony of four correctional officers who had interacted with Moore on a daily basis. All of them indicated that Moore communicates well and successfully socializes with others.

---

[8](...continued)

not arbitrary), it bars federal review of the constitutional claim. "It is not always easy, however, to determine whether a state court decision is based on state procedural grounds or, instead, on the court's interpretation of federal law." *Id.* at 195.

The state court dismissed Moore's successive habeas petition for failure to meet the requirements of article 11.071 § 5(a). The federal district court initially determined that the state court's ruling did not result in a procedural default of Moore's *Atkins* claim for either one of two possible reasons: (1) The dismissal under article 11.071 § 5(a) is independent of the *Atkins* claim because all that the statute requires is an allegation of specific facts establishing that the factual or legal basis of the asserted claim was previously unavailable; the ruling is inadequate, however, because given that minimal procedural requirement, the dismissal of Moore's petition was arbitrary; or (2) the dismissal is not independent of the *Atkins* claim, because the TCCA performs a threshold merits inquiry under article 11.071 § 5(a).

When it later ruled on the merits of Moore's *Atkins* claim, the court adopted only holding (1). *See infra*. The district court never ruled on whether, as the state contends on appeal, Moore's claim is procedurally defaulted under 28 U.S.C. § 2254-(b)(1)(A) for failure to exhaust state court remedies.

Following the hearing, the district court again granted Moore habeas relief, holding that he is mentally retarded and thus ineligible for the death penalty pursuant to *Atkins*. *Moore v. Dretke*, No. 03-CV-224 (E.D. Tex. July 1, 2005).[9] The court found that the state court's dismissal of Moore's petition was not a ruling on the merits, but rather was an independent, though inadequate, application of article 11.071 § 5(a). The court therefore employed a *de novo* standard of review in assessing the merits of Moore's claim, determining that no deference was owed to the state court's ruling under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.

The state appeals, advancing three main arguments in the alternative: (1) Moore's claim is procedurally defaulted under 28 U.S.C. § 2254(b)(1)(A) because he failed to exhaust his state court remedies before proceeding to federal court; the petition he filed with the TCCA amounted to a mere conclusional allegation of mental retardation that deprived the state court of the opportunity to rule on the substance of his claim; (2) the state court's dismissal of Moore's successive petition was merits-based and accordingly should be upheld given the deference it is owed under AEDPA; and (3) even if the district court was correct in employing a *de novo* standard, the district court's factual findings with regard to Moore's intellectual and adaptive functioning are clearly erroneous, and its legal conclusion that Moore falls under the protection of *Atkins* is incor-

rect.[10]

## II.
### A.

In the district court, the state opposed Moore's request for an evidentiary hearing on the basis of 28 U.S.C. § 2254(e)(2), arguing that Moore had failed factually to develop his *Atkins* claim in state court and thus should not be allowed such a hearing in federal court. On appeal the state contends that Moore's presentation of new factual allegations, along with supporting evidence, in federal court that he did not include in his state petition implicates the exhaustion requirement of 28 U.S.C. § 2254(b)(1)(A). We have at least twice held that any problems presented by allegations and evidence introduced for the first time on federal review are "more accurately analyzed under the 'exhaustion' rubric . . . ." *Dowthitt v. Johnson*, 230 F.3d 733, 745 (5th Cir. 2000);

---

[9] The court directed the state to release Moore from custody unless, within 180 days, it permanently stayed his execution or reformed his sentence to life imprisonment.

[10] Although the state represents in its briefs that it does not waive the argument that Moore's *Atkins* claim is procedurally defaulted because the state court's dismissal was predicated on an independent and adequate state ground, the state offers no support for that argument other than to claim that "the issue is certainly debatable." It instead spends much of its brief discussing the effect of the state court's ruling if it is in fact merits-based and thus not independent of Moore's constitutional claim. Because the state failed adequately to brief the issue of whether the state court's dismissal of Moore's successive petition provides an independent and adequate bar to federal habeas review, the argument is waived. *See United States v. Martinez*, 263 F.3d 436, 438 (5th Cir. 2001). The state has not, however, waived its argument with regard to the particular reason for why there is no procedural default. Although the district court held that the state court dismissal was independent of the merits of Moore's *Atkins* claim, yet inadequate, the state contends that the dismissal arguably was not independent of the merits of the claim.

6

*see also Morris*, 413 F.3d at 498.

### B.

Under § 2254(b)(1)(A), "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State." The exhaustion requirement "is not jurisdictional, but reflects a policy of federal-state comity designed to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Anderson v. Johnson*, 338 F.3d 382, 386 (5th Cir. 2003) (internal citations and quotations omitted). Whether a federal habeas petitioner has satisfied the exhaustion requirement is a question of law that we review *de novo*. *Id.*

### C.

The exhaustion requirement is satisfied if petitioner has fairly "presented the substance of his claim to the state courts." *Vasquez v. Hillery*, 474 U.S. 254, 258 (1986). The requirement is not satisfied if he "presents new legal theories or factual claims in his federal habeas petition. We have consistently held that a petitioner fails to exhaust state remedies when he presents *material* additional evidentiary support to the federal court that was not presented to the state court." *Anderson,* 338 F.3d 386. (internal citations and quotations omitted). Evidence is not material for exhaustion purposes if it "*supplements*, but does not *fundamentally alter*, the claim presented to the state courts." *Id*. at 386-87. The failure to exhaust is a procedural bar to federal review that may be excused if the petitioner "can demonstrate cause for the defaults and actual prejudice." *Martinez v. Johnson*, 255 F.3d 229, 239 (5th Cir. 2001).

### D.

The state argues that Moore's successive state habeas petition was sparse to the point of amounting to a brief, conclusional allegation of mental retardation. The state emphasizes in particular that Moore made no allegations and offered no evidence before the TCCA with regard to his limitations in adaptive skill areas. The state contends that the presentation of such allegations and evidence for the first time in federal court fundamentally alters Moore's *Atkins* claim, rendering it unexhausted. We agree.

In *Anderson*, an "admittedly close case" on whether the petitioner had exhausted his state court remedies with respect to his ineffective assistance of counsel claim, this court asserted that the fact that "the portion of Anderson's state post-conviction brief dedicated to ineffective assistance is remarkably detailed in both fact and law" provided the tipping point in favor of a finding of exhaustion. *Anderson*, 338 F.3d at 388. In *Morris v. Dretke*, 413 F.3d 484 (5th Cir. 2005), an even more recent "admittedly close" case in which we addressed the question with which we are now facedSS whether new evidence introduced in federal court rendered petitioner's *Atkins* claim unexhaustedSSwe similarly emphasized the importance of the detail with which the state petition was presented. *Morris*, 413 F.3d at 496.

The petitioner in *Morris* had not included an IQ score in his successive state habeas petition, because he lacked the funds to obtain the expert assistance required to administer such a test. After his state petition was dismissed, we allowed Morris to file a successive federal habeas petition, and the district court granted him leave to retain expert and investigative assistance. As a result, Morris was able to present a full-scale IQ score of 53 at the subsequent evidentiary hearing on the merits

7

of his federal petition. *Id.* at 489.

The state contended that Morris's *Atkins* claim was unexhausted because he had failed to present this IQ evidence to the state court. We disagreed, asserting that although, as in *Anderson*, Morris's federal claim was "unquestionably in a comparatively stronger evidentiary posture than it was in state court," several factors weighed in Morris's favor. *Id.* at 496 (internal citations and quotations omitted). Most notably,

> [Morris] . . . properly outlined the AAMR's definition for mental retardation, since adopted by the TCCA as one of Texas's current standards for determining mental retardation, [*Ex parte Briseno*, 135 S.W.3d 1, 7-8 (Tex. Crim. App. 2004)], and noted the necessity to meet all three essential prongs of the definition. *See id.* Morris also clearly acknowledged that IQ evidence was lacking in his particular case but still insisted "[t]here is good reason to believe that [Morris is retarded] . . . because of the documented history of adaptive deficits," including Morris's "inability to read and write and his failure in functional academics," "inability to obey the law and follow rules," "inability to avoid victimization," "inability to develop instrumentalities of daily living [and] occupational skills," and "inability to maintain a safe environment," *all of which were attested to by the sworn affidavits and school records presented to the state courts.*

*Id.* (emphasis added).

Furthermore, we acknowledged with approval that "Morris saw fit to present an expert affidavit [along with his state petition], which, albeit preliminarily, provided a psychologist's acknowledgment of and support for

Morris's mental retardation claim." *Id.* Finally, we noted that Morris had consistently asserted that "given the opportunity and resources, intellectual tests would confirm" his mental retardation. *Id.* Accordingly, we held that the state court had been given a fair opportunity to rule on the substance of Morris's *Atkins* claim and that therefore his presentation of the IQ score for the first time on federal review supplemented, but did not fundamentally alter, that claim.

The successive habeas petition Moore filed with the TCCA pales in comparison to the one we considered in *Morris*. As we have discussed, Moore merely asserted in his petition that he had scored a 74 on an IQ test when he was a child, that he had been placed in special education throughout his schooling, and that he had suffered multiple head injuries, one of which occurred when he was no older than ten.

Moore cited to the trial record in support of these claims but offered neither school records nor supporting affidavits from family members, friends, teachers, or even the psychologist who had testified on his behalf at trial. He referenced neither the AAMR's diagnostic criteria for mental retardation nor the similar definition of retardation contained in § 591.003 of the Texas Health and Safety Code.[11] Most importantly, he failed to allege that he is deficient in two or more adaptive skill areas and indeed made no mention of adaptive limitations as such.

---

[11] "'[M]ental retardation' means significantly subaverage intellectual functioning that is concurrent with deficits in adaptive behavior and originates during the developmental period." TEX. HEALTH & SAFETY CODE § 591.003(13).

8

Moore's contention that he was in special education throughout his schooling arguably could be construed as an allegation that he was only minimally functional in an academic setting. In support of that bare assertion, however, he did not "identify any specific special education classes or provide documentation of those classes," *Moreno*, 450 F.3d at 164, nor did he offer any reason why he could not present such evidence. Moore's petition did not touch, even arguably, on any other adaptive skill area, let alone explain why supporting evidence was lacking. Such a petition cannot be considered sufficiently "detailed in fact and law" to warrant a finding of exhaustion.

In *Morris*, 413 F.3d at 497, we noted that the AAMR's three diagnostic criteria are interdependent and that evidence satisfying one prong is, "standing completely on its own," not sufficient to avoid summary dismissal of an *Atkins* claim. Given that interdependence, it cannot be said that where a defendant's state petition completely neglects one prong of the AAMR inquiry, the presentation of evidence in support of that prong on federal review merely supplements his *Atkins* claim.

It is true that Morris's state petition was missing the allegation of a below-average IQ usually needed to support a finding of substandard intellectual functioning. The petition, however, "recognized the lack of [IQ] evidence in his record but noted various school records obtained by his counsel" were indicative of his subpar intelligence. *Id*. at 487. Moreover, the absence of IQ evidence in his state petition was appropriately explained by the fact that Morris at that time lacked the funds to obtain testing.

Moore, by contrast, neglected to specify his adaptive limitations and failed to provide a plausible excuse for why he could not present more than a scintilla of evidence on that prong. Indeed, there is no excuse for why he did not at minimum submit affidavits from his family members confirming his limitations in two or more areas of adaptive functioning. As was true in *Dowthitt*, 230 F.3d at 758, "[g]iven that the family members were willing to testify at a hearing, [Moore] could have easily obtained their affidavits [before he filed his petition in state court]. A reasonable person in [his] place would have done at least as much . . . . Obtaining affidavits from family members is not cost prohibitive."

E.

We recognize that the *Atkins* Court did not adopt a particular criterion for determining whether a defendant is mentally retarded; the Court instead left to the states "the task of developing appropriate ways to enforce the constitutional restriction . . . ." *Atkins*, 536 U.S. at 317. We also acknowledge that at the time Moore filed his petition, neither the Texas legislature nor the TCCA had developed a precise means of determining whether a criminal defendant qualifies for *Atkins* relief.

The *Atkins* Court, however, did reference the AAMR's criteria and noted that most already-existing statutory definitions of mental retardation "conform to the clinical definitions . . . ." *Id*. at 317 n.22. In addition, in *Ex Parte Briseno*, 135 S.W. 3d 1, 7 (Tex. Crim. App. 2004), the court stated that even before it officially adopted the AAMR's criteria in the *Atkins* context, it had "previously employed" that definition in analyzing allegations of retardation relative to claims made under *Penry v. Lynaugh*, 492 U.S. 302 (1989). Accordingly, it is fair to conclude that even for habeas petitions filed pre-*Briseno*, a petitioner has not adequately presented the substance of his *Atkins* claim to the TCCA unless he has, at the very least, (1) outlined either the AAMR cri-

teria or the substantially equivalent § 591-.003(13) definition of mental retardation and (2) either alleged why he satisfies each criterion or asserted reasons why he is currently incapable of presenting any evidence on a particular prong.

Moore's state court petition is more akin to the type of conclusional allegation that we found insufficient to support exhaustion on an ineffective assistance of counsel claim in *Kunkle v. Dretke*, 352 F.3d 980 (5th Cir. 2003), than it is to the robust claim of mental retardation presented to the state by the petitioner in *Morris*. Moore's *Atkins* claim is therefore defaulted under 28 U.S.C. § 2254(b)(1)(A).

### F.

We decline to excuse Moore's failure to exhaust his state court claim. "The failure to exhaust is a procedural bar to federal review that may be excused if the petitioner can demonstrate cause for the defaults and actual prejudice." *Hillery*, 474 U.S. at 260. Here, there was no cause; nothing "external to the petitioner" prevented him from at least referring to the test for mental retardation that had been discussed by the Supreme Court and had appeared in two other Texas authorities at the time of his petition, or from supplying school records or affidavits from family members attesting to his adaptive limitations.

Moore argues that, at the time he filed his petition, he did not know how extensive his factual pleading had to be to satisfy § 11.071 in the context of an *Atkins* claim. He did know, however, that Texas had to develop a standard to implement *Atkins*. He noted at oral argument that § 11.071 is analogous to the federal bar on successive habeas petitions, § 2254(b)(2)(A), which requires a petitioner to make a *prima facie* showing of entitlement to relief. It should have been obvious to him that

[a] second or subsequent writ must contain 'sufficient specific facts' to support an applicant's *Atkins* claim. A writ application which makes the naked assertion, 'I am mentally retarded,' obviously does not suffice to leap over this second hurdle. If it did, every inmate on death row would be equally entitled to file a subsequent writ in the hope that something, somewhere, might turn up to support this bare assertion."

*Ex Parte Williams*, 2003 WL 1787634, at *1 (Tex. Crim. App. 2003) (Cochran, J., concurring) (unpublished).

Neither *Williams* nor *Briseno* had been decided when Moore filed his second state habeas petition, and we do not rigidly hold him to the pellucid standards announced in those cases; it is, nonetheless, reasonable to require him to cite a standard already mentioned by the Supreme Court in *Atkins* and on the books in two Texas authorities at the time of his petition and to supply (or argue credibly as to why he could not supply) evidence to support his claim.

As we have explained, Moore failed adequately to do this. To excuse his petition would be to excuse an inadequate and conclusional filing that, for reasons not fairly attributable to factors outside the petitioner's control, denied the state court its fair opportunity to develop a standard by which to implement *Atkins* and evaluate Moore's petition.

Because our finding of unexcused failure to exhaust state remedies alone requires the dismissal of the petition, it is unnecessary to consider the state's remaining arguments. Based on Moore's default of his state court remedies, we VACATE the judgment granting the writ and REMAND with instruction to dismiss Moore's *Atkins* claim with prejudice.

DENNIS, Circuit Judge, dissenting:

I respectfully dissent from the majority's decision to vacate the district court's judgment granting Moore relief from the death penalty. Specifically, I do not agree that Moore failed to exhaust his state court remedies. Even if I were to agree that Moore failed to exhaust his state court remedies, I believe that he nevertheless is entitled to federal habeas review because he has shown both sufficient cause for the default and actual prejudice. Additionally, a fundamental miscarriage of justice will result if we fail to consider the merits of Moore's *Atkins* claim. Finally, there was sufficient evidence to support the district court's finding that Moore is mentally retarded. Therefore, the federal district court's ruling granting Moore habeas relief should be affirmed.

## 1. Exhaustion of State Remedies

The state presented three alternative arguments on appeal: (1) Moore failed to exhaust state court remedies; (2) the federal district court erred in reviewing Moore's claim *de novo*; and (3) the district court's factual

11

findings were clearly erroneous. The majority opinion disposes of the case on the exhaustion issue, finding that, under *Dowthitt v. Johnson*, 230 F.3d 733, 745 (5th Cir. 2000), this case is "more accurately analyzed under the 'exhaustion' rubric[.]".[1] Because it finds that Moore presented material additional evidence in federal court that was not presented to the state court, it concludes that Moore's *Atkins* claim is unexhausted, and therefore dismisses his petition. Given the circumstances of this case, however, the majority's finding of failure to exhaust is in error.

*A. Incorrect Test Applied to Exhaustion Analysis*

My first point of contention is with the test created by the majority. The majority recognizes that Moore filed his successive state habeas petition after *Atkins v.*

---

[1] In footnote 8, the majority concludes that, because it was not adequately briefed, the state has waived its argument that Moore's *Atkins* claim is procedurally defaulted because the state court's dismissal was based on the requirements of TEX. CODE CRIM. PROC. art. 11.071 §5(a), which was an independent and adequate state court ground. I agree with the assessment that this argument is waived.

*Virginia*, 536 U.S. 304 (2002), but before the Texas Court of Criminal Appeals decided *Ex Parte Briseno*, 135 S.W.3d 1 (Tex. Crim. App. 2004), the case in which the Texas Court of Criminal Appeals adopted the definition of mental retardation to be used in *Atkins* cases. Neverthe-less, the majority decides that "it is fair to conclude that even for habeas petitions filed pre-*Briseno*, a petitioner has not adequately presented the substance of his *Atkins* claim to the [Texas Court of Criminal Appeals] unless he has, at the very least, (1) outlined either the AAMR criteria or the substantially equivalent § 591.003(13) definition of mental retardation and (2) either alleged why he satisfies each criterion or as-serted reasons why he is currently incapable of present-ing any evidence on a particular prong." Apparently, the majority reaches this conclusion because the Texas Court of Criminal Appeals indicated in *Briseno* that it had "previously employed" the AAMR definition of mental retardation in cases making claims under *Penry v. Lynaugh*, 492 U.S. 302 (1989). Though the Texas courts previously had relied on definitions of mental retarda-

13

tion in *Penry* cases, they had not yet clarified what standard would be used in *Atkins* cases, as they were directed to do by the Supreme Court.[2] At the time Moore filed his successive state habeas petition, there was nothing in Texas' *Atkins* jurisprudence to direct Moore on how to present evidence of mental retardation in his petition. Therefore, I disagree with the majority that it is "fair to conclude" that Moore was required to present his mental retardation evidence in the manner set forth by the AAMR or the Texas Health and Safety Code.

Despite the fact that Moore was not required to present his mental retardation evidence in accordance with definitions not yet adopted by Texas, Moore did give evidence of mental retardation such that his petition was sufficiently "detailed in fact and law" to warrant a finding of exhaustion.[3] In his successive state habeas petition, Moore provided evidence of a low IQ, that he

---

[2] *Atkins*, 536 U.S. at 317 (leaving to the states "the task of developing appropriate ways to enforce the constitutional restriction").

[3] The majority opinion states that Moore's petition "cannot be considered sufficiently 'detailed in fact and law' to warrant a finding of exhaustion."

14

had been in special education, had brain damage, and that the onset of these problems was prior to age 18. To claim that he is mentally retarded, Moore had to assert: (1) significantly subaverage general intellectual functioning; (2) limitations in adaptive functioning; and (3) an onset prior to age 18. *Briseno*, 135 S.W.3d at 8. Clearly, Moore touched on all three of the criteria for mental retardation in his successive state habeas petition.[4] Therefore, he "presented the substance of his claim to the state court[]", thus satisfying the exhaustion requirement. *Vasquez v. Hillery*, 474 U.S. 254, 258 (1986).

The majority turns to this circuit's recent opinion, *Moreno v. Dretke*, 450 F.3d 158 (5th Cir. 2006), as authority to disregard that Moore's claim of being in special education classes as evidence that he suffers from limited adaptive functioning. In *Moreno*, this court declined to issue a COA on Moreno's *Atkins* claim, finding

---

[4] The majority does not take issue with Moore's evidence of "significantly subaverage intellectual functioning" and "onset prior to age 18." The only problem appears to be with Moore's evidence of limited adaptive functioning.

no error in the district court's decision that the state court reasonably held that Moreno did not present a prima facie *Atkins* claim. *Id.* at 165. In his successive state habeas petition, Moreno presented evidence that he scored a 64 on an IQ test when he was 35 years old. *Id.* at 164. He also alleged that he attended special education classes as a child, thus arguing that he suffered adaptive limitations. *Id.* The *Moreno* panel stated that Moreno's "only evidentiary support for [the special education] claim was the psychologist's report reciting Moreno's self-reported educational background. He could not identify any specific special education classes or provide documentation of those classes." *Id*. at 164. The majority in this case uses that statement from *Moreno* to conclude that Moore's claim that he was in special education classes is not sufficient to constitute proof of limited adaptive functioning. The majority's conclusion is in error.

In *Moreno*, the court based its decision on much more than the lack of supporting evidence of special education classes. The *Moreno* panel explained, "[m]uch of this

16

evidence, such as Moreno's employment history, fails to suggest adaptive limitations. Balanced against this meager evidence of adaptive limitations is the substantial evidence that Moreno possesses adaptive behavioral skills." *Id.* at 165. The *Moreno* panel did not conclude that claiming to have been in special education classes was not enough to qualify as proof of limited adaptive functioning, but that, in Moreno's case, the evidence to the contrary outweighed the allegations that Moreno was in special education classes because he suffered limited adaptive functioning. *Id.* This is not the situation in Moore's case, and therefore, the case before us is distinguishable from *Moreno*.

Since Moore adequately presented the substance of his claim that he is mentally retarded and therefore not eligible for the death penalty according to *Atkins* in state court, his claim was properly exhausted and there was no bar to the district court ruling on the merits of Moore's *Atkins* claim. Accordingly, any new evidence presented to the district court merely supplemented Moore's state claim. As the majority explains:

17

> We have consistently held that a petitioner fails to exhaust state remedies when he presents *material* additional evidentiary support to the federal court that was not presented to state court." *Anderson v. Johnson*, 338 F.3d 382, 386 (5th Cir. 2003). Evidence is not material for exhaustion purposes if it "*supplements*, but does not *fundamentally alter*, the claim presented to the state court." *Id*. at 386-87.

To support the claim that he suffers from limited adaptive functioning, Moore offered a vast amount of evidence in federal court that was not presented to state court, including testimony from family, friends, teachers, and neighbors, as well as school records. This testimony merely supplemented Moore's claim that he was in special education classes and suffered limited adaptive functioning. Moore is allowed to "supplement and clarify" his claims presented in state court "through expansion of the record" with evidence such as "more sophisticated statistical analyses than were presented in state courts" and "introduction of new factual materials supportive of those already in the record[.]" *See* Randy Hertz & James S. Liebman, FEDERAL HABEAS CORPUS PRACTICE AND PROCEDURE § 23.3c, at 1088-89 (5th ed. 2005) (internal citations omitted). Because Moore's additional evidence presented in federal

court did not "fundamentally alter the legal claim" presented in state court, his claim was not unexhausted. *See Vasquez*, 474 U.S. at 260.

The majority attempts to distinguish this case from *Morris v. Dretke*, 413 F.3d 484 (5th Cir. 2005), a case in which this circuit found that, though the petitioner presented more evidence in federal court than in state court, his *Atkins* claim was not unexhausted. The court came to this conclusion even though it found that Morris' federal claim was "unquestionably in comparatively stronger evidentiary posture than it was in state court" because Morris presented an IQ score in federal district court and had not presented an IQ score in his state court habeas petition. *Id.* at 496 (internal citations omitted). The *Morris* court found that Morris "clearly acknowledged that IQ evidence was lacking in [Morris'] particular case, but still insisted '[t]here is good reason to believe that [Morris is retarded]. . . because of the documented history of adaptive deficits[.]'" *Id.* (citations omitted).

Apparently, the *Morris* court looked to Morris' evidence

of limited adaptive functioning to compensate for the lack of an IQ score. Even the majority in this case concedes the *Morris* court's point that "the AAMR's three diagnostic criteria are interdependent." *See id.* at 497. Thus, there is no reason why, in Moore's case, this court could not look to the evidence of special education and brain injury to deduce that Moore had limited adaptive functioning. This is especially true since, as in *Morris*, there is "nothing in [the] record that shows that [Moore] 'attempted to expedite federal review by deliberately withholding essential facts from the state courts.'" *Id.* at 496. Therefore, the outcome in *Morris* actually supports Moore in this case. Where, as in Moore's situation, the substance of a petitioner's claim was presented in state court, and additional, supplemental evidence is presented in federal court, that petitioner has exhausted his claim in federal court, even if his federal court evidence makes his case stronger.

*B. The Prima Facie Requirement Applied Retroactively*

My second point of contention is the majority's characterization of the Texas Court of Criminal Appeals'

decision as a consideration of Moore's claims on the merits and as analogous to the merits inquiries in *Morris* and *Moreno*, which both included within the scope of an *Atkins* claim in a motion for authorization to file a successive habeas petition, a *prima facie* showing that the petitioner is, in fact, mentally retarded.  The majority opinion agrees with the state's argument that "Moore's successive state habeas petition was sparse to the point of amounting to a brief, conclusional allegation of mental retardation."

The legal requirements for a valid *Atkins* claim were not clear at time Moore filed his second application for post-conviction relief in state court and when the Texas Court of Criminal Appeals denied his application under Texas Code of Criminal Procedure, Article 11.071, Section 5(a).  It denied his application simply as an "abuse of the writ," because the application failed to "contain sufficient specific facts which would satisfy the requirements of Art. 11.071 Sec. 5(a)." *Ex Parte Moore*, No. 38,670-02 (Tex. Crim. App. Feb. 5, 2003).  Importantly, the judgment was filed on February 5th, 2003.

21

The basis for the majority's application of the *Morris* and *Moreno* standards for their state exhaustion analysis presumably is the assumption that the "sufficient facts" language in 11.071 is analogous to the *prima facie* showing of mental retardation required as part of a petitioner's *Atkins* claim before a successive petition is permitted in federal court under 28 U.S.C. § 2244(b). The majority states, "[t]he successive habeas petition Moore filed with the TCCA pales in comparison to the one we considered in *Morris*," which is a federal 28 U.S.C. § 2244 case. The majority builds its opinion from this two-part foundation: (1) motions for successive habeas petitions based on an *Atkins* claim in both state and federal courts require a *prima facie* showing; (2) the *prima facie* requirement is comparable between federal and state courts. From these two premises, the majority concludes that the new evidence supporting Moore's *prima facie* showing of mental retardation as presented to the federal courts "fundamentally alter[s]" the *Atkins* claim presented to the state court. As the majority holds, since the state and federal appellate forums both require

the presentation of such evidence adjudged under similar standards, the petitioner cannot be excused from his failure to present this evidence in state court.

The two premises that underpin the majority's conclusion do not apply to Moore unless they are unfairly applied retroactively. The premise that the Texas courts and the Fifth Circuit include a *prima facie* showing, as part of a motion to file a successive petition for post-conviction relief based on an *Atkins* claim, did not exist when Moore filed his second state application for post-conviction relief, and more importantly, when the Texas Court of Criminal Appeals rendered its judgment on February 5, 2003. The Texas Court of Criminal Appeals, in a divided unpublished opinion in *Ex Parte Williams*, 2003 WL 1787634 (Tex. Crim. App. Feb. 26, 2003) and the Fifth Circuit in *In re Morris*, 328 F.3d 739 (5th Cir. Apr. 15, 2003), required, for the first time, a *prima facie* evidentiary showing for <u>Atkins</u> claims in applications to file successive petitions for post-conviction relief. Subsequently, the Texas courts then equated these federal and state requirements as analogous. *See*, *e.g.*, *Ex Parte Riveria*,

2003 WL 21752841 *1 n. 2 (Tex. Crim. App. July 25, 2003). As one can see, all these decisions occurred *after* the Texas Court of Criminal Appeals ruled on Moore's successive application for post-conviction relief. Even *Ex Parte Williams*, the first case in this series, was determined after Moore already filed his motion to authorize his successive federal habeas petition on February 11, 2003, *Moore v. Cockrell*, 2003 WL 25321830 *1 (E.D.Tex. 2003), which we subsequently approved. *See Moore v. Dretke*, 369 F.3d 844, 845 (5th Cir. 2004).

Unlike the standards issue raised in the previous section, Moore could not have possibly predicted when he filed his state petition and his motion to file a successive habeas petition in federal court that a *prima facie* evidentiary showing of mental retardation was required in his state application for post-conviction relief. In fact, the dissenters in *Ex Parte Williams* rejected the view that Article 11.071 Section 5(a) required a *prima facie* evidentiary showing, but would have required only "sufficient facts" necessary to point out that an intervening change in the law provided a new claim previously

24

foreclosed.  *See Ex Parte Williams*, 2003 WL 1787634, at 6 (Price, J., dissenting).  Applying similar reasoning as the *Ex Parte Williams* dissenters, the Tenth Circuit in *Ochoa v. Sirmons*, 485 F.3d 538, 544-545 (10th Cir. 2007), criticized the Fifth Circuit's decision in *In Re Morris* as having no basis in precedent, and, thus, disputed our incorporation of a *prima facie* evidentiary showing into the *Atkins* claim in motions for authorization to file successive federal habeas petitions. *See Ochoa,* 485 F.3d at 541-545 & n.4 ("Development and resolution of the mental retardation issue is, rather, the province of the district court in the proceedings we properly authorize on the distinct grounds specified in § 2244(b)(2)(A)").

Clearly, it was reasonable for Moore to believe that his state claim and federal claim when filed at the appellate court level were the same claims, regardless of the evidentiary proof incorporated into them, since an *Atkins* claim did not require any *prima facie* showing of mental retardation in applications for successive petitions for post-conviction relief at the appellate levels before *Ex Parte Williams* and *In Re Morris*.  The majority's conclu-

sion that because the evidence provided for the *prima facie* showing of mental retardation was different for federal and state forums, and therefore the whole *Atkins* claim was not factually exhausted in state court, retroactively applies the *prima facie* showing requirement in *Ex Parte Williams* and *In Re Morris* to Moore's state petition. Before these standards existed, we cannot assume that the Texas Criminal Court of Appeals examined the merits of the *prima facie* evidence of mental retardation, because they were not required to. In fact, per the dissenters in *Ex Parte Williams*, the Texas Criminal Court of Appeals should examine only whether "sufficient facts" establish that the "*legal* basis for his claim was unavailable when he filed his initial application for writ of habeas corpus." *Ex Parte Williams*, 2003 WL 1787634, at *6 (Price, J., dissenting) (emphasis added). If the Texas Court of Criminal Appeals denied Moore's petition because he did not allege sufficient facts to establish that an *Atkins* claim was unavailable when he filed the initial writ, then it committed a clear constitutional error by denying the retroactivity of *Atkins*.

26

If the Texas court actually examined the merits of the evidence for mental retardation and dismissed the entire *Atkins* claim under article 11.071 based on the insufficiency of evidence for mental retardation, then the decision was arbitrary, since there was no requirement or notice that such a *prima facie* showing was required at that time for article 11.071 section 5(a) review. This was the conclusion of the district court. *Moore v. Dretke*, 2005 WL 1606437, *3 (E.D.Tex. 2005); see <u>supra</u> _____ at n.8.[5]

In effect, the Texas Court of Criminal Appeals' decision must either be considered clear constitutional error for failing to apply *Atkins* claims retroactively or, as the district court found, the decision was arbitrary for analyzing the merits under a *prima facie* showing requirement when the petitioner was not required to make such a

---

[5] The other possibility was that the Texas Court of Criminal Appeals' denial of Moore's second application for post-conviction relief was based on an independent procedural bar. That argument was waived. See, *supra*, footnote 1.

showing.[6] Additionally, since the *Atkins* claim in applications for successive petitions for post-conviction relief did not include an evidentiary component in state or federal forums when Moore's state claim was adjudicated, his state claim should not be considered "fundamentally" different from the federal claim for exhaustion purposes based solely on differences in evidentiary support. Finally, the plaintiff never "failed" to exhaust the facts presented to the federal courts below, because a *prima facie* showing of mental retardation was never required at that time in the state court. *Cf. Morris v. Dretke*, 413 F.3d 484, 499-500 (5th Cir. 2005) (Higginbotham, J., concurring) ("The [Supreme] Court rejected a 'no-fault' reading of [28 U.S.C. § 2244], and found that '[u]nder the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the

---

[6] In addition, before *In Re Riveria*, the evidentiary standards found in federal court opinions should not be presumed to apply to any merits inquiry at the state level.

prisoner's counsel.'"). In any event, the injustices detailed above will only magnify and complement the equity arguments discussed below.

## 2. Exceptions to the Exhaustion Rule

The failure to exhaust may be excused if the petitioner "can demonstrate cause for the defaults and actual prejudice." *Martinez v. Johnson*, 255 F.3d 229, 239 (5th Cir. 2001). This circuit has recognized that "[c]ause is defined as something external to the petitioner, something that cannot fairly be attributed to him that impedes his efforts to comply with the state procedural rule. 'Cause' factors may include interference by officials that makes compliance with the procedural rule impracticable, a showing that the factual or legal basis for the claim was not reasonably available to counsel, and ineffective assistance of counsel [ . . . ] on direct appeal." *Matchett v. Dretke*, 380 F.3d 844, 848-49 (5th Cir. 2004) (internal citations omitted). Further, prejudice is found where "the specific facts and circumstances of the proceeding in which the error occurred" have "worked to the petitioner's *actual* and substantive

disadvantage." Hertz & Liebman, *supra*, § 26.3c, at 1346-47 (emphasis in original)(citing *United States v. Frady*, 456 U.S. 152, 170 (1982) and *United States v. Olano*, 507 U.S. 725, 734-35, 736, 739-41 (1993)).

Given this standard, it is evident that even if Moore's claims are unexhausted, he satisfies the "cause and prejudice" exception to the exhaustion rule. Though Moore did not provide all of the evidence available to him in order to support his assertion that he attended special education classes as a child, and did not express his mental retardation evidence using the AAMR categories, he did state that "[t]o date, there has been no published case from the Court of Criminal Appeals giving guidance to what constitutes retardation under Texas law." Contrary to the majority's position, Moore's statement regarding the then-uncertain state of Texas law does provide an explanation of why such supporting evidence was lacking - Moore had not received guidance from Texas courts on how to present his evidence of mental retardation post-*Atkins*. Certainly, something external to Moore, namely that Texas had not yet decided

*Briseno* and *Ex Parte Williams*, caused Moore's inability to present his mental retardation evidence according to the now-established Texas procedure. Further, the facts and circumstances of Moore's case demonstrate that Moore was prejudiced by this lack of guidance. The fact that Moore did not know how to set forth his mental retardation evidence such that it would be acceptable to the Texas Court of Criminal Appeals caused the state court to dismiss Moore's successive state habeas petition. This is clearly an "actual and substantive disadvantage" suffered by Moore. As such, Moore has satisfied the "cause and prejudice" exception to the exhaustion rule.

Another exception to the exhaustion rule applies to situations where the petitioner can "demonstrate . . . that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The Supreme Court has made clear that the "miscarriage of justice" exception extends to cases in which "[t]he Constitutional violation has probably resulted in the imposition of a death sentence upon one who is actually innocent of a death

sentence." Hertz & Liebman, *supra*, § 26.4, at 1369 (internal citations omitted); *see also Dugger v. Adams*, 489 U.S. 401, 411 n.6 (1989). This means that a petitioner can invoke the "miscarriage of justice" exception if, but for the failure to exhaust, "the petitioner would have not been eligible for the death penalty because some constitutional or state statutory prerequisite for the imposition of a death sentence could not have been satisfied." Hertz & Liebman, *supra*, § 26.4, at 1369-71; *see also Sawyer v. Whitley*, 505 U.S. 333, 343, 345-50 (1992). Moore easily satisfies this exception because, as explained in section 3 of this dissent, when allowed to look at the merits of Moore's *Atkins* claim, the district court properly found that Moore is mentally retarded. Therefore, in accordance with the Supreme Court's finding in *Atkins*, Moore is ineligible for the death penalty, as his execution would constitute cruel and unusual punishment in violation of the Eighth Amendment. In other words, the evidence in this case shows that any alleged failure to exhaust is excused because Moore is actually "innocent of the death penalty."

3. <u>The District Court's Finding of Mental Retardation</u>

The majority does not reach the issue of whether the district court erred in finding that Moore is mentally retarded. It is necessary to reach this issue, however, because Moore's *Atkins* claim was either exhausted in state court, or his failure to exhaust is excused. Therefore, this appeal cannot be disposed of on a finding of failure to exhaust. Accordingly, it is necessary to turn to the state's argument that the district court's factual findings were clearly erroneous.

The district court analyzed Moore's habeas petition using the AAMR definition of mental retardation, one of the mental retardation definitions adopted by the Texas Court of Criminal Appeals in *Briseno*. The AAMR defines mental retardation as:

> A disability characterized by significant limi-
> tations in both intellectual functioning and in
> adaptive behavior, as expressed in conceptual,
> social, and practical adaptive skills. This
> disability originates before age 18.

*Briseno*, 135 S.W.3d at 8; American Association of Mental Retardation, MENTAL RETARDATION: DEFINITION, CLASSIFICATION AND SYSTEMS OF SUPPORTS (10th Ed. 2002) at 1. Therefore, as

explained earlier, to prove that he is mentally retarded, Moore had to establish: (1) significantly subaverage general intellectual functioning; (2) limitations in adaptive functioning; and (3) an onset prior to age 18. *See Briseno*, 135 S.W.3d at 8. The district court properly found that Moore presented sufficient evidence to warrant a finding of mental retardation.

First, Moore met his burden of showing that he suffered from subaverage general intellectual functioning. The state claims that the district court erred in finding Moore mentally retarded, because that finding was made in the absence of a single, valid IQ score, and instead on the sole basis of subjective, anecdotal testimony from biased family members. Moore has taken four IQ tests over his lifetime. The first was the Primary Mental Abilities Test ("PMA") given at age 6, on which he scored a 74. He also received a 76 on the WAIS-R taken at age 24 in 1991, which was adjusted to a 72.1 to account for the Flynn effect.[7] On the WAIS-III, administered in 2004,

---

[7] The Weschler Adult Intelligence Scales test (the "WAIS") is the standard instrument in the U.S. for assessing intellectual functioning. The Flynn effect

(continued...)

Moore scored a 66.  Last, Moore took a TONI-2 non-verbal reasoning test and scored in the Very Poor range.  At trial, though Dr. Gary Mears, the state's expert psychologist, did testify that he had some questions about the accuracy of the IQ scores, he also stated that he would agree with Dr. Antolin Llorente, Moore's expert psychologist, that Moore satisfied the significantly subaverage general intellectual functioning prong of the mental retardation definition.  Dr. Llorente testified that all of Moore's IQ scores, including the one taken at age 6, were consistent with the WAIS-III score of 66.  Dr. Llorente also testified that Moore was assessed for response bias to determine whether he was fabricating his results, and no such bias was found.  Given the agreement among the experts and the concession by the state's expert, there appears to be sufficient evidence for the district court to have determined that Moore satisfied this prong of the definition.

Second, to support the claim that he suffers from

[7](...continued)
recognizes that norm IQ scores across a population have increased approximately 3 points per decade.

limited adaptive functioning, Moore offered a significant amount of evidence in federal court, including testimony from family, friends, teachers, and neighbors, as well as school records.[8] Though Dr. Mears stated that Moore was not limited in adaptive functioning, he admitted that he could not effectively assess adaptive functioning without the use of adaptive functioning scales. Dr. Llorente, though, did confidently conclude that Moore suffered from adaptive deficits in every area of set forth by the DSM-IV or the AAMR. Likewise, there was sufficient evidence for the district court to conclude that the onset of Moore's mental retardation occurred before age 18. Again, the experts agreed that this was the case. In addition to the experts, testimony was given by Moore's family members explaining that it was common knowledge within the community that Moore was "slow" as a child. Overall, the district court listened to the opinions of experts, heard testimony from family members,

---

[8] There is evidence that Moore was not in special education classes, but in "corrective classes." It appears that this distinction is inconsequential, because the point is that Moore was not able to keep up with children his age.

and reviewed Moore's academic records, vocational work, communication skills, health and safety, social skills, leisure, self-care, home living, use of community resources, and victimization and gullibility. Based on all of these factors, there was sufficient evidence for the district court to conclude that each prong of the definition of mental retardation was satisfied. Therefore, it was not clearly erroneous for the district court to conclude that Moore is mentally retarded.

### 4. District Court's Standard of Review

The majority also does not reach the issue of whether the district court applied an incorrect standard of review to Moore's habeas petition. Again, it is necessary to reach this issue because this case cannot be disposed of on the exhaustion question alone. Considering the procedural history of this case, it is apparent that the district court employed the correct standard of review.

The state takes issue with the district court's decision to review Moore's claim *de novo* and its explanation that it was doing so because the state court's dismissal was

37

procedural in nature and was not an adjudication on the merits.  Though the state argues that large portions of Moore's mental retardation claim are procedurally defaulted, the state still maintains that the dismissal of Moore's successive state habeas application may not have been independent of *Atkins* and, thus, may not be an absolute procedural dismissal.  If this is the case, then the district court should have reviewed the state court's dismissal only to determine whether it was "contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding," as directed by AEDPA. 28 U.S.C. § 2254(d)(1)-(2).

However, Moore's claim was not adjudicated on the merits in state court.  The Texas Court of Criminal Appeals dismissed Moore's application because it found that Moore had failed to allege specific facts in his application that would satisfy the elements of the Texas subsequent

application rule.[9] This was a pure procedural decision, and it did not involve the Texas Court of Criminal Appeals hearing Moore's evidence to determine whether he is in fact mentally retarded. When a state court does not adjudicate a claim on its merits, the federal court must determine the claim *de novo*. *Miller v. Johnson*, 200 F.3d 274, 281 n.4 (5th Cir. 2000). Therefore, AEDPA's deferential standard of review does not apply. As such, the district court did not err in undertaking a *de novo* review of Moore's *Atkins* claim.

## Conclusion

For the reasons indicated, the district court did not err in hearing Moore's federal habeas petition. Furthermore, the district court's ruling granting Moore habeas relief was not in error. Because it holds otherwise, I dissent from the majority opinion.

---

[9]Alternatively, the Texas Court of Criminal Appeals may have incorrectly dismissed Moore's application when it examined whether there were "sufficient facts" to support a legal basis for his claim, *i.e.*, if *Atkins* applied retroactively to his claim. If it dismissed his claim by failing to apply *Atkins* retroactively to Moore's claim, then there is clear constitutional error.